ELKTON ELECTRIC COMPANY, Incorporated, *vs.*
THOMAS W. PERKINS et al., Receivers.

*Deed of Trust—Beneficial Certificates—Interest of Grantor—
Joint Stock Company—Shares as Personalty—Estoppel
of Grantor—Equity Jurisdiction—Administration
of Trust—Sale Before Final Decree.*

Where the exclusive owner of property made a deed of trust
thereof, by the terms of which the income from the property
was to be paid to the holders of "beneficial certificates" to be
issued, but no such certificates were issued, and no *cestuis que
trust* designated, and the grantor, after the execution of the
deed, received all the income and exercised sole and exclusive
dominion and control over the property, and all the bonds
secured by a mortgage subsequently executed by the trustees
were applied to the payment of a debt due by the grantor in the
deed of trust, *held* that such grantor was the *cestui que trust*
and as such entitled to the benefit of the trust.        p. 244

The grantor in a deed of trust who, subsequently to its exe-
cution, procured the making of a mortgage on the trust prop-
erty by the trustees, and sold bonds secured by such mortgage,
was estopped to question the validity of the deed of trust, as
were persons asserting claims against his estate after his de-
cease.                                              p. 244

Where a trust estate, in an electric plant supplying current
to consumers, was created by a deed of trust executed by its
owner, by the terms of which deed the net profits were to be
paid to holders of "beneficial certificates," but such holders had
no control over the property or its management, nor title to
any part thereof, and all the property, both real and personal,
was so blended and fused and identified with the business that,
considered apart from that business, its value would be greatly
lessened, and the creator of the trust treated the whole prop-
erty, real and personal, as one and as personalty, *held* that the
interest of the holder of a "beneficial certificate," or of one
entitled to the issue of such a certificate, being analogous to
that of a holder of shares in the stock of a joint stock associa-
tion or corporation, was personal property.        pp. 244-247

The interest of the holder of stock in a joint stock association is, like that of the holder of stock in a corporation, personal property, irrespective of the character of the property owned by the association.                    p. 246

Where the grantor in a deed of trust, having included in the deed a piece of land in which he had a half interest only, with knowledge by him that the trustees would mortgage such piece of land with other property to secure bonds with which to pay such grantor's debts, subsequently acquired the other half interest, he held such half interest in trust for his grantees, and he and his privies were estopped to deny the title of the trustees thereto.                    p. 248

Where for many years property standing in the name of a corporation was used as part of an electric business conducted by one who owned all the stock of the corporation, and who treated its property as his own, and such property was included by him as part of that business in a deed of trust executed by him, was represented by him as being part of such business in his application to the Public Service Commission for permission to make the deed of trust, and was included, or intended to be included, in a mortgage made by such trustees for the purpose of paying off debts due by him, *held* that he and his privies were estopped to deny the title of the trustees thereto.

                    p. 248

A bill asking the court to assume jurisdiction of a trust created by a certain deed of trust, and supervise and control the income and property thereof, to declare that a certain piece of land and certain property standing in the name of a corporation belonged to the trust estate, to require the heirs and personal representatives of the deceased creator of the trust to transfer to the trustees all property, standing in such decedent's name, used as part of a certain business, and also all stocks, bonds and other securities of such corporation held by said decedent, to require the trustees to account for all property constituting the trust estate, and for the receipts and expenditures in connection therewith, and to require the trustees to give bond, *held* to be insufficient to confer jurisdiction on a court of equity.                    pp. 235, 249

That one had died insolvent, that a federal court had appointed receivers to take charge of all his real estate, that

there was a question whether such decedent's interest in a trust estate was realty or personalty, and that property used as an integral and essential part of the plant covered by the trust stood in the name of a corporation, and was about to be seized by a judgment creditor of the corporation, *held* sufficient to justify an application to a court of equity for aid and guidance in the administration of the trust, and to justify the court in assuming jurisdiction thereof.                          p. 250

Where, after the court assumed jurisdiction of a trust, it became apparent that the trust property, consisting of an electric plant, must ultimately be sold, the interest on bonds covering the property was due, without any fund available for its payment, the property was being operated at a loss, it was in bad repair and inadequate to the demands of the business, and could be put on a paying basis only by the expenditure of large sums, and there was an unsatisfied judgment against a subsidiary or constituent company in which was vested the paper title to an essential part of its plant, *held* that the court properly ordered a sale of the trust property, under authority of Code, art. 16, sec. 222, before final decree.           p. 250

*Decided February 15th, 1924.*

Appeal from the Circuit Court for Cecil County, In Equity, (WICKES and KEATING, JJ.).

Bill by Clarence W. Perkins, substituted trustee, against Henry A. Warburton, and others. From various decrees and orders finally ratifying a sale to the Elkton Electric Company, Incorporated, by Thomas W. Perkins and Wesley McAllister, receivers appointed in said proceeding, said purchaser appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Stevenson A. Williams* and *Philip H. Close,* with whom were *S. R. Zimmerman* and *Fred R. Williams* on the brief, for the appellant.

*E. P. Keech, Jr.,* with whom were *Keech, Deming, Kemp & Carman* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

William T. Warburton, a citizen and resident of Elkton, in Cecil County, Maryland, at the time of his death, which occurred on February 28th, 1922, owned and possessed an estate of some magnitude, embracing both real and personal property. At the same time he was heavily indebted to a number of persons, among whom was the Second National Bank of Elkton, of which he had been president, and which was also deeply involved. Shortly after his death the Comptroller of the Currency of the United States, having determined that the Second National Bank was insolvent, appointed Thomas W. Perkins a receiver for it, and he thereupon filed in the District Court of the United States for the District of Maryland a creditor's bill against the executor and the heirs of William T. Warburton, alleging that he was insolvent at the time of his death, and in which he asked that court to assume jurisdiction of the estate of William T. Warburton and to administer and distribute the same, and to order a sale of it for the benefit of his creditors. The defendants answered that bill, and, after testimony in connection with the pleadings had been taken, the court declined to assume jurisdiction of the decedent's personal estate, but did determine that William T. Warburton died insolvent and did assume control of his real estate, and appointed Thomas W. Perkins, Henry L. Constable and Henry A. Warburton receivers to take charge thereof, and by its subsequent order directed them to sell certain described parts of the real property owned by the decedent at the time of his death.

At the time of his death William T. Warburton was interested in the property known as the Gilpins Falls hydro electric plant, which supplied electric current throughout a large part of Cecil County. Just what that interest was is the principal and controlling question in the case, and we will refer to it at more length later. Now it is sufficient to say that some years before his death he conveyed that property to trustees, who in turn conveyed it by a mortgage deed of trust to the Union Trust Company of Baltimore, trustee, to secure an issue of bonds. The trust company was removed

as trustee and Mr. Clarence W. Perkins substituted for it, and he, after the appointment of receivers by the federal court, filed in the Circuit Court for Cecil County a bill of complaint, later consolidated with a second bill to much the same effect against those receivers and the several persons interested in the property, in which, stated in very general terms, he asked that court to assume jurisdiction of the trust created by the deed to the Union Trust Company, to determine the nature and extent of the property of the Gilpins Falls trust estate, to adjudicate the validity and priority of any liens asserted against the property, to decree a sale of it for the satisfaction of liens against it, and for the appointment of receivers to aid in effecting the relief thus prayed. In the proceeding thus instituted Thomas W. Perkins and J. Wesley McAllister were appointed receivers, and subsequently (before final decree) they were authorized and directed to sell the property, and in pursuance of that authority and direction they reported to the court a private sale of it to the Elkton Electric Company, as the highest bidder, for $75,000. Exceptions to that sale were filed, and, pending the final disposition of them, the court asked for further bids on the property. As a result sealed bids were submitted, and again the Elkton Electric Company was the highest bidder at $100,000. Exceptions to that sale were also filed by the purchaser on the ground that the receivers could not convey a marketable title, for several reasons, the most important of which was that the property included real estate belonging to William T. Warburton at the time of his death, and that the Federal court, having assumed jurisdiction thereof, the State court could not have, and, in fact, had not acquired, any right or jurisdiction to sell it. These exceptions were all overruled, and the sale finally ratified to the appellant, which thereupon took the appeals which bring the matter before this Court.

The objections offered by the appellant to the sale can be thus stated, (1) that the property was, at the time the bill of complaint in this case was filed, in the custody and control of a Federal court, and that in consequence the State

court could only exercise a jurisdiction ancillary to its administration there, which was not broad enough to permit it to order a sale of the property; (2) that even if the State court had the power to sell, it had no power to refuse to ratify the bid of $75,000 made by the appellant, and (3) that if it had potential authority to sell, the State court could not in this case exercise that power because it had under the pleadings no power to order a sale before any final decree, and (4) that the receivers had no marketable title to at least part of the property sold.

The first proposition rests upon the theory that the interest which William T. Warburton had in the property known as the Gilpins Falls Hydro Electric Trust Estate at the time of his death was real and not personal property, and that the United States District Court, having assumed jurisdiction of all the real estate of which he died seised, necessarily assumed jurisdiction of his interest in that company, and that in consequence the Circuit Court for Cecil County could not, and in fact did not, acquire jurisdiction over said property, and that all its acts in reference thereto were *coram non judice,* null and void.

Before dealing with the legal principles involved in that contention we will state the facts out of which it grows. The Gilpins Falls Hydro Electric Trust Estate, to which we will hereafter for convenience refer as the Gilpins Falls Trust Estate, was organized for the purpose of producing and selling electric current in Cecil County, Maryland. It is the successor, so far as the general nature and character of its business is concerned, of the Gilpins Falls Electric Company, which appears to have been a trade name for William T. Warburton, who conducted the business. Its property is made up partly of real estate, such as land, buildings, easements, &c., and of personal property such as franchises, contracts, privileges, machinery, equipment and the like. Included in the real estate used by William T. Warburton, as a part of the electric light and power plant which he operated, were two tracts of ground, each including one or more lots, which we will for brevity describe as the Davis lot and

the High Street lot, both in the town of Elkton. The Davis
lot was conveyed in 1895 to William T. Warburton and
Isaac D. Davis. At that time it was and still remains an
essential and necessary part of the hydro electric property
plant and business operated and carried on by Warburton,
and it was so used by him, although Davis owned an undi-
vided one-half interest therein. Some time after the deed
to Warburton and Davis, Davis died and, on September 23rd,
1921, subsequent to the deed of trust hereinafter referred to,
his heirs at law conveyed to William T. Warburton all the
right, title and interest which Davis had had in the prop-
erty. The High Street lot was also used as a necessary and
essential part of the business. There were erected on it a
power house and other improvements used in connection
therewith, and it was treated by Warburton apparently as
an integral part of the whole plant. The title to it stands
in the name of the Elkton Electric Light and Power Com-
pany, an inactive corporation, which is said to have owned
also the original franchise under which Warburton sold elec-
tric current in Elkton. Warburton, however, appears to have
taken possession of this property and to have used it as his
own in connection with the electrical business referred to
above for many years prior to the execution of the deed of
trust referred to below. The Elkton Electric Light and
Power Company, on January 2nd, 1893, executed a mortgage
deed of trust on this lot, together with all other property
then owned by it, to the Chestnut Street Trust and Savings
Fund Company of Philadelphia to secure an issue of bonds
to the amount of $12,500. John S. Wirt succeeded that
company as trustee, but at his death, which occurred some
years ago, no one was appointed in his place, so that now
there is no one to administer the trust. It is charged in the
second bill of complaint in the consolidated cases, and ad-
mitted in certain of the answers, that Warburton owned all
of these bonds as well as all of the stock of this corporation,
and that it was as result of that ownership that he treated
that corporation and its property as his own. Although it is
stated that that corporation has long since ceased to func-

tion, that it has neither officers nor directors, that it has held no meetings, and that it abandoned all of its property to Warburton, nevertheless the Federal Reserve Bank of Richmond, on May 6th, 1922, secured a judgment against it in the District Court of the United States for the District of Maryland for $6,114.14, for an indebtedness the nature of which does not appear in the record, and that judgment was entered to the use of Thomas W. Perkins, receiver of the Second National Bank of Elkton.

With the property of the Gilpins Falls hydro electric business in that situation, William T. Warburton and Anna M. Warburton, his wife, on September 20th, 1921, executed a deed and declaration of trust to Charles E. and Henry A. Warburton, trustees, in which they conveyed to them all the property and rights constituting the Gilpins Falls hydro electric plant or project. That deed conferred upon the trustees plenary powers as to the operation and management of the property, authorized them to sell, lease or mortgage it, limited their liability under it, provided for the payment of the net income to the *cestui que trust,* and for the issuance of "beneficial certificates," and for its final conversion and distribution at the end of twenty-one years after the death of the survivor of certain persons named in it. It contains, among others, the following provisions which, as peculiarly germane to the question before us, may be referred to seriatim:

> "To collect and receive all rents, profits, avails and accretions from or to the aforesaid trust property, estate or corpus, and semi-annually or oftener, at their convenience, to distribute such portion thereof as they may in their discretion determine to be fairly distributable net avails, net income and net proceeds to and among the several *cestui que trust* as their interest may appear, * * *

> "In further trust in favor of all and singular the aforesaid *cestui que trust* according to the respective beneficial interest or part of each in the trust estate hereunder and in all accretions and avails thereto, and to all said *cestui que trust* shall issue proper certifi-

cates of beneficial interests or parts, all of which and all others which may hereafter be issued in exchange, addition or substitution therefor shall be deemed parts hereof and conclusive evidence of the ownership of the respective interests or parts in this trust estate, * * *

"The said trustees and their successors are hereby empowered, in any lawful·manner and form, to borrow money and fix the terms of any loans and give any pledge, mortgage or other security therefor which they may deem wise, and no person dealing with said trustees and their successors shall in any event be bound to see to the application of any purchase money, proceeds or other avails or accretions of the trans-·action, and any lawful transfer of any part of said trust estate and property executed by said trustees and their successors shall pass a title thereto to the grantee thereof good both at law and in equity, free clear and discharged from all the trusts hereby created. * * *

"The beneficial holder of any certificate or part hereof or *cestui que trust* has no right, title or interest, legal or equitable, in any specific part of the trust property and estate hereunder, but is entitled to his respective part of said property and estate, avails, accretions, acquisitions and proceeds when said property as aforesaid is converted into cash, and in the meantime to his part of its avails, accretions and proceeds as herein provided. * * *

"To convert all and singular the said trust estate into money and distribute the net proceeds, avails and accretions thereof among the persons at the time of such conversion holding and owning beneficial interests therein, as evidenced by the certificates therefor issued by the said trustees or their. successors as·hereinbefore provided, but. said trustees and their successors may, in their uncontrolled discretions, defer or postpone such conversion and distribution except that the same shall not be postponed beyond the end of twenty-one years from and after the death of the last survivor of the persons hereinafter named and described in paragraph No. 20 hereof, and pending such

postponement and until the conversion thereof, the interests of the *cestui que trust* shall be considered for purposes of transfer or otherwise, solely as personal property, and * * *

"At the end of twenty-one years from and after the death of the survivor of the following named persons, that is to say: Charles E. Warburton, Henry A. Warburton, Henry A. Warburton, Jr., William T. Warburton of Henry, Helen J. Warburton and Richard Banks Warburton, and of the lawful issue now living of any of them (unless this trust estate shall theretofore have been otherwise lawfully terminated), all the property of every kind then held hereunder shall be sold by the trustees and equitable distribution thereof made of the net proceeds of such sale among the persons then duly entitled thereto."

No *cestuis que trust* are named in the deed nor does it appear that any "beneficial certificates" were ever issued.

Prior to the execution of that deed Warburton had applied to the Public Service Commission of Maryland for authority to execute it, and in his application he had filed a detailed schedule of the property included in the hydro electric plant and business, which he proposed to convey in the deed above referred to, and in that schedule he included the Davis lot and the High Street lot, to which he had not at that time the record title. The Public Service Commission, upon such representations, authorized the execution of the deed, and thereafter the trustees applied to it for authority to execute a mortgage deed of trust on the property to secure bonds to the amount of $750,000. The Commission also authorized the execution of that deed, but limited the amount of bonds to be issued without its further order to $125,000.

Accordingly, on October 10th, 1921, the trustees executed to the Union Trust Company a mortgage deed of trust to secure an issue of first mortgage gold bonds to the amount of $750,000, and actually issued bonds to the amount of $125,-000.00.

The record contains only a partial and incomplete extract from that mortgage and fails to show that it contains any provision authorizing a foreclosure or authorizing the trustee to institute such a proceeding as this to protect the interests of the bondholders, but inasmuch as it was tacitly admitted in this Court that it did contain such provisions, we would assume, if necessary, that it did grant such power to the trustee.

After the execution of that mortgage, bonds to the amount of one hundred and twenty-five thousand dollars were issued, and delivered to the Second National Bank of Elkton on account of an indebtedness of William T. Warburton to it, and bonds to the amount of one hundred and twenty-one thousand dollars, of those delivered to the bank, are now held by its receiver, and the remaining four bonds are in the possession of Johnson Brothers of Harford County.

Notwithstanding the execution of the deed of trust to which we have referred, William T. Warburton continued to manage and operate the electric business, collected its revenues, and treated it as his own property, until the time of his death. After the death of William T. Warburton, Charles E. Warburton, one of the trustees named in the deed from William T. Warburton and wife to Charles E. and Henry A. Warburton, resigned from the trust, and J. Wesley McAllister was duly appointed in his place, so that when the bill of complaint, to which we will presently refer, was filed, among others, the following persons had, or claimed to have, an interest in the property of the Gilpins Falls Trust Estate: Thomas W. Perkins, receiver of the Second National Bank, which holds bonds secured by the mortgage to the Union Trust Company to the amount of $121,000 as well as unsecured claims, and the judgment obtained by the Federal Reserve Bank of Richmond against the Elkton Electric Light and Power Company which was entered to his use; Thomas W. Perkins, Henry L. Constable, and Henry A. Warburton, receivers of the real estate of William T. Warburton, appointed by the United States District Court upon a creditor's

bill filed therein by Thomas W. Perkins; Henry A. Warburton and J. Wesley McAllister, trustees under the deed from William T. Warburton; and Clarence W. Perkins, substituted trustee under the mortgage deed of trust to the Union Trust Company.

On July 20th, 1922, Clarence W. Perkins, substituted trustee, filed in the Circuit Court for Cecil County a bill of complaint against Henry A. Warburton, in his own right and as trustee under the deed and declaration of trust dated September 20, 1921, as executor of the last will and testament of William T. Warburton, deceased, and as receiver of the District Court of the United States for the District of Maryland, Edna A. Warburton, his wife, Anna M. Warburton, J. Wesley McAllister, as trustee under the deed and declaration of trust dated September 20, 1921, and Henry L. Constable, as receiver of the District Court of the United States for the District of Maryland, Thomas W. Perkins, as receiver of the District Court of the United States for the District of Maryland, the Second National Bank of Elkton, in Cecil County, Charles E. Warburton and Anna Louise Warburton. In that bill he prayed for the following relief: (1) That the court assume jurisdiction of the trust created by the deed from William T. Warburton *et al.* to Henry A. Warburton *et al.,* and supervise, direct and control the income and property thereof; (2) that it declare the Davis lot above referred to to be the property of the trust estate; (3) that the Court declare the property of the Elkton Electric Light and Power Company to be the property of the trust estate; (4) that the heirs and personal representatives of William T. Warburton be required to convey and assign to the trustees of the Gilpins Falls Trust Estate all property standing in the name of William T. Warburton at the time of his death, used by him as part of the electric business and pledged by him as part of the security for the bonds secured by the mortgage, as well as all stocks, bonds and other securities of the Elkton Electric Light and Power Company held by said Warburton at his death; (5) that it

require the trustees of the Gilpins Falls Trust Estate to account for all the real and personal property constituting the trust estate; (6) that they be compelled to account for the receipts and expenditures received and made by them in the operation of said property; (7) that the court require said trustees to give an adequate bond.

J. Wesley McAllister and Henry A. Warburton demurred to that bill, while Thomas W. Perkins and Henry L. Constable, receivers, answered it, concluding their answer in these words:

> "It is not only proper that this court should assume jurisdiction of the real and personal property, franchises and rights, constituting said Gilpins Falls Hydro-Electric Trust Estate, but that on account of the gross irregularities and confusion, existing in the affairs of the late William T. Warburton, it is essential for the protection of the creditors of said William T. Warburton and all persons having an interest in his estate and affairs, that this court should take jurisdiction of said trust estate, supervise the administration thereof, and see to the proper and lawful application and distribution of the revenues and income thereof.
>
> "Wherefore, having fully answered said bill of complaint, these defendants submit themselves to the jurisdiction of the court in the premises."

Before the demurrers were disposed of, Clarence W. Perkins, substituted trustee, filed a second bill of complaint in reference to the same subject matter, in the same court, against all the defendants named in the first bill, and also against the Elkton Electric Light and Power Company. In that bill the complainant asked for the following relief: (1) the appointment of receivers to take charge of the property of the Gilpins Falls Trust Estate, "including therein the franchises and real and personal property, legal title to which stands in the name of Elkton Electric Light and Power Company, and any and all real and personal property, howsoever owned or held, which is in the possession of said Warburton

and McAllister as trustees, or is operated as part of or in connection with said Gilpins Falls Hydro-Electric Trust Estate," with power to continue and conduct the business to which the property, was applied, (2) that all property standing in the name of the Elkton Electric Light and Power Company, operated and used as part of the Gilpins Falls Trust Estate, be declared to be the property of said estate and subject to the lien of the mortgage to the Union Trust Company, (3) that said Elkton Electric Light and Power Company be required to convey said property to Warburton and McAllister as trustees of said Gilpins Falls Trust Estate, (4) that the court adjudicate and determine the priority of all liens against the estate, (5) that the receiver of the Second National Bank be restrained from executing on the judgment of the Federal Reserve Bank against the Elkton Electric Light and Power Company, (6) that pending a final decree all persons be restrained from seizing or levying upon any part of the property of the Gilpins Falls Trust Estate, (7) that the property be sold and the proceeds distributed among the claimants thereto according to their legal priorities, (8) and that the case be consolidated with the case above referred to.   Several of the defendants having filed combined answers and demurrers to the second bill of complaint, the cases were set down on the bills, answers and demurrers, and the court on September 21st, 1922, after the hearing, filed an order and decree overruling the demurrers to the first bill of complaint, sustaining the demurrers as to the relief prayed in the first paragraph of the second bill, and overruling the demurrers as to the remainder of said bill; consolidating the two cases; assuming jurisdiction of the trust estate known as the Gilpins Falls Hydro Electric Trust Estate; requiring the trustees of said estate to give bond in the sum of $25,000; requiring them to give a detailed account of the trust property; and to make and state monthly accounts of their receipts and disbursements in the operation of said estate; enjoining the execution of the judgment of the Federal Reserve Bank against the Elkton Electric Light and Power Company, and requiring the trustees

to state an account of all the receipts and disbursements in said trust estate from its beginning.

Subsequently Henry A. Warburton, in his own right and as trustee of the Gilpins Falls Hydro Electric Trust Company, answered the consolidated bills, admitting in substance their averments, and at the same time J. Wesley McAllister, his co-trustee, filed an answer admitting generally the averments of the bill, and consenting to the court's assuming jurisdiction of the trust estate, and to the appointment of receivers to take charge of, manage and operate it, and on the same day these two trustees asked to be relieved of the further administration of the trust created by the deed of trust dated September 20th, 1921. Thereupon the Circuit Court for Cecil County appointed Thomas W. Perkins and J. Wesley McAllister receivers of the Gilpins Falls Hydro Electric Trust Estate.

After that, on December 29th, 1922, Clarence W. Perkins, substituted trustee, filed a petition asking the court to authorize a sale of the entire Gilpins Falls Trust Estate property, including the Davis lot and the High Street lot, before a final decree, under the authority of section 222, article 16, C. P. G. L. of Md. Upon the filing of that application the court passed an order requiring all persons interested to show cause on or before a day certain why said order should not be passed as prayed, and notice of this application and order was given to all persons interested either by the sheriff or through the mails. After the time for showing cause against the application as fixed in the order had passed, and after the court had heard testimony as to the wisdom and propriety of an immediate sale of the property, it passed, on January 19th, 1923, a decree for the sale at public or private sale of the property, which in part contains these statements:

"And it having been made to appear to the court by proof and testimony in open court, and the court being satisfied, first, that at the final hearing of this consolidated case a sale of the real and personal property, rights and franchises, described in the two bills

of complaint, filed herein, and constituting the real
and personal property, rights and franchises of the
trust estate, known as Gilpins Falls Hydro-Electric
Trust Estate, will be ordered, and second, that it is
advisable and to the best interests of all parties hav-
ing any right, interest, title, claim or estate in and
to any part of such real and personal property, rights
and franchises, that a sale of the same should be
made forthwith and before the entry of a final decree
herein. * * * Thomas W. Perkins and J. Wesley Mc-
Allister, the receivers heretofore appointed by this
court in this consolidated cause, shall be, and they are
hereby, directed to make sale of all and singular the
real and personal property, rights and franchises of
all kinds, sorts or descriptions, constituting and going
to make up the corpus of the trust estate, known as
Gilpins Falls Hydro-Electric Trust Estate, * * *
including therein the tract of land, known as the sub-
station lot, legal title to an undivided one-half interest
in which stands in the heirs or devisees of the late
William T. Warburton, deceased, subject to the rights
of his creditors, * * * and including also the real and
personal property, rights and franchises, legal title to
which stands in the name of Elkton Electric Light and
Power Company, a corporation created by and exist-
ing under chapter 451 of the acts of the General As-
sembly of Maryland, passed in the year 1892, * * *
as a whole and as a going concern, business or enter-
prise * * * and as soon as may be convenient after
such sale, whether public or private, the said receiv-
ers shall return to this court a full and particular ac-
count of their proceedings relative to such sale, with
an annexed affidavit of the truth thereof, and of the
fairness of said sale; and on obtaining the court's
ratification of the sale, whether public or private, and
on the payment of the whole purchase money (and
not before), the said receivers shall, by a good and
sufficient deed or other conveyance, to be executed,
acknowledged and recorded according to law, convey
to the purchaser or purchasers, his or their heirs, per-
sonal representatives and assigns, the real and per-

sonal property, rights and franchises to him or them sold, free, clear and discharged from all claims, rights, liens, equities, estates or interests of any and all parties to this consolidated cause."

Under that order the receivers reported a sale of the property described in it to the Elkton Electric Company for $75,000, and on their report the court passed an order ratifying the sale unless cause to the contrary were shown on or before a day certain. Thereupon the Home Manufacturing, Light and Power Company, which desired to purchase the property, the Elkton Electric Company, the purchaser, creditors of the Second National Bank of Elkton, and others, excepted to the sale. Testimony in connection with those exceptions was taken, which showed that William T. Warburton, when seeking authority to execute the declaration of trust to his sons, and the mortgage to the Union Trust Company, had represented that he was the exclusive owner of the property included in the Gilpins Falls Trust Estate, including the Davis lot and the property of the Elkton Electric Light and Power Company, and that that property and that company were his exclusive property, and in connection with the same exceptions the following facts were stipulated by counsel for the Elkton Electric Company and the receivers; that is to say:

"1.　That all the real and personal property, rights and franchises, now in the possession of said receivers and constituting the corpus of the property, rights and franchises of Gilpins Falls Hydro-Electric Trust Estate, were prior to the execution of the deed and declaration of trust of September 20, 1921, elsewhere appearing in this transcript of record, in the exclusive possession of William T. Warburton, now deceased.

"2.　That the said William T. Warburton claimed and asserted sole, exclusive and individual ownership in and to the same and each and every part thereof.

"3.　That said William T. Warburton did business under the trade name of Gilpins Falls Electric Com-

pany, but that there was no corporation or other formal organization under that name.

"4. That included in the real and personal property, rights and franchises, to which said Wiliam T. Warburton so asserted sole, exclusive and individual ownership, were the real and personal property, rights and franchises (including the power house lot on High Street, Elkton, and the franchise or right to conduct the electric business in the town of Elkton), legal title to which stands in the name of Elkton Electric Light and Power Company."

By its order of May 8th, 1923, after a hearing, the court overruled all the exceptions of the Elkton Electric Company except the one based upon the fact that the heirs or representatives of John S. Wirt, the successor of the Chestnut Street Trust and Savings Fund Company, trustee named to administer the trust created by the deed from the Elkton Electric Light and Power Company to it to secure an issue of bonds to the amount of $12,500, had not been made parties to the proceedings, and as to that exception it made the following provision:

"It is hereby ordered that the complainant shall be, and he is hereby required forthwith to join the legal successor or successors of said John S. Wirt, deceased, in said trust, as party or parties defendant to the above entitled consolidated cause; and that no distribution of the funds arising from the sale of the real and personal property, rights and franchises, ordered to be sold by the order or decree of sale before final decree, entered herein on January 19, 1923, shall be made until such successor or successors in trust have been made party or parties to this cause."

In dealing with the exceptions of the Home Manufacturing Light and Power Company and others it made this provision:

"It is further ordered that the hearing on the exceptions of George C. Biddle *et al.* and of Home Manufacturing Light and Power Company be continued un-

til Saturday, May 12, 1923, at three-thirty o'clock P. M., at which time the court will receive from said Elkton Electric Company, Inc., and from said Home Manufacturing Light and Power Company, and from any other party or parties, sealed bids for the real and personal property, rights and franchises of Gilpins Falls Hydro-Electric Trust Estate, as described and referred to in the order or decree for sale before final decree entered herein on January 19, 1923, and in the petition of Clarence W. Perkins, trustee, complainant, upon which said order or decree for sale was entered, and will then and there sell and finally confirm the sale of the same to the highest bidder for the same, the bids to be sealed and presented to the court at said time, and to be made upon the conditions set forth in the first, second and third paragraphs of this order, * * * and the sale to be made to Elkton Electric Company, Incorporated, in case its bid shall equal the highest bid made by any other party. * * * In case no further or additional bids shall be then made, the sale, heretofore reported to Elkton Electric Company, Incorporated, shall be confirmed upon the following conditions:

"a. The conditions set forth in the first, second and third paragraphs of this order, and

"b. The condition that Elkton Electric Company, Incorporated, shall agree to pay the unpaid or deferred portion of the purchase price of said real and personal property, rights and franchises, heretofore reported as sold to it, immediately upon the entry of an order of final ratification of sale instead of upon the terms and conditions set forth in the agreement of sale submitted to the court by the receivers herein for ratification."

Following that order the Elkton Electric Company filed a bid of one hundred thousand dollars for the property, which bid was incorporated in a "petition" filed by that company on May 12th, 1923. That petition, after protesting against the action of the court in calling for additional bids, and denying its right to do so, contained these statements:

"Your petitioner, therefore, with reservation of each and every of its rights, and without prejudice thereto, and without accepting the conditions or any of them imposed by said order, hereby offers to pay in the event that their previous bid is not accepted, the sum of one hundred thousand dollars ($100,000) for said property, franchises and rights, payable as follows: one-third. cash on the final ratification of the sale, one-third in six months, and the balance in twelve months with interest as provided in the order of May 8th, 1923, the sum already paid to be a part of the cash payment.

"Your petitioner, reserving all its rights, as aforesaid, and hereby protesting the right of the court to pass the aforesaid order of May 8th, 1923, in the terms aforesaid, nevertheless, because of obligations already incurred by your petitioner on the faith of its said agreement of purchase, as made by said receivers and reported by them, as aforesaid, and plans made in contemplation of the ownership of said property and as a means for its own protection, is impelled to make the increased offer for said property, as hereinbefore set forth."

The Home Manufacturing Light and Power Company also submitted a sealed bid of $93,101 for the property. After the receipt of these bids the court directed the receivers to report a sale to the Elkton Electric Company for $100,000, which was accordingly done, and the sale thus reported was without further notice finally ratified and confirmed on May 21st, 1923. Thereupon the Elkton Electric Company ordered an appeal from the order of May 8th, 1923, overruling the exceptions filed to the private sale reported by the receivers to the court, from the order of May 12th, 1923, directing the receivers to accept the sealed bids of the appellant, and from the order of May 21st, 1923, ratifying the sale to them of the Gilpins Falls Trust Estate Company at $100,000.

The facts thus stated are to be found for the most part in the pleadings, and rest largely in record evidence and

the admissions of counsel, supplemented to some extent by testimony.

Coming next to the several legal propositions stated above, we will deal first with the nature of William T. Warburton's interest in the Gilpins Falls Trust Estate, with respect to its character as real or personal property.

There is nothing found in the record which shows that the trustees under the deed from William T. Warburton and wife to Charles E. and Henry A. Warburton ever issued to any one the "beneficial certificates" which under said deed were to be issued to the *cestuis que trust,* nor is there any evidence that any *cestuis que trust* were ever designated by them or by others in any way. In view, however, of the undisputed fact that William T. Warburton was the exclusive owner of the property which he thus conveyed in trust, and that he received all the income thereof and exercised sole and exclusive dominion and control thereover in his lifetime after the execution of said deed, and that, while he received no specific consideration for the conveyance, all the bonds secured by the mortgage executed by the trustees were applied to the payment of his debt, we must, if we are to give any meaning at all to that deed, assume that he himself was the *cestui que trust,* and as such entitled to the benefit of the trust, whether or not any "beneficial certificate" was actually issued to him. He would have been estopped from asserting that the deed was a nullity because no one existed in whose favor the trust could operate, in view of his conduct in procuring the mortgage to the Union Trust Company and in selling to the Second National Bank of Elkton bonds having a par value of $125,000 secured by such mortgage, nor do any of the parties to this proceeding asserting claims against his estate stand in any different position.

Reduced to its simplest terms, then, the effect of that deed was to convey to the trustees named in it the property which it described in trust to pay such *cestuis que trust* as should hold "beneficial certificates" the income therefrom during the lives of certain persons named in it and for twenty-one years thereafter, unless it were sold before that time, and in that

event to pay to them such cash or securities as were realized at the sale, and at the expiration of that period to convert it into cash and distribute the same to them. William T. Warburton was then during his lifetime entitled to demand and receive from the trustees beneficial certificates representing the value of his interest in the property, and the question is, Was that interest real or personal property? That question is to some extent affected by the consideration that the property conveyed was composed of real and personal property dedicated to a common business and so blended that its separation into the two classes would practically destroy the value of each.

While the trust estate is neither a joint stock company nor a corporation, it has many characteristics common to both. The interests of the persons for whose benefit it is operated are by its organization represented by certificates; the holders of such certificates, while entitled to receive the net profits of the enterprise, have no control whatever over it or its management, nor have they any title to any of its property; and all of its property, both real and personal, is so blended and fused and identified with its business that considered apart from that business its value would be very greatly lessened, and the ownership of the certificates is a different and distinct thing from the ownership of the property held by the trustees. And this would be so whether the certificates were or were not issued to Warburton, just as the relation of a stockholder to a corporation or a joint stock company would be the same whether the shares were actually issued or not, provided he was entitled to have them issued.

Personal property has been said to be "the right or interest which a man has in things personal, or the right or interest less than a freehold which a man has in realty, or any right or interest which he has in things movable," 32 *Cyc.* 666, and is also defined in 22 *R. C. L.*, page 63, as follows: "The term personal property embraces all objects and rights which are capable of ownership except freehold estates in land, and incorporeal hereditaments issuing thereout, or exercisable within the same."

While, strictly speaking, not technically referable to any of the classes specifically named in these definitions, stock in a corporation and shares in a joint stock company are undoubtedly personal property (32 *Cyc.* 670; 22 *R. C. L.* 67; *Monongahela Bridge Company* v. *Pittsburg & B. Traction Co.,* 196 Pa. 25, 79 Am. St. Rep. 685; *In re Greenleaf,* 184 Ill. 226), and may be regarded as a chose in action. *First Nat. Bk.* v. *Holland,* 99 Va. 495, 86 Am. St. Rep. 898. Such shares are property separate and distinct from the property of the association or corporation, and that distinction is very clearly pointed out in the case of *In re Jones,* 172 N. Y. 575, in which the court, in deciding that a share in a joint stock company was personalty regardless of the character of the property owned by the association, said:

"As to the nature of the shares of stock issued by a joint stock association, the same general principles of law are to be invoked that apply to a corporation. This Court in *Weaver* v. *Barden,* 49 N. Y. 286, held that the capital stock of an incorporated company is personal property. The supreme court of Rhode Island, in *Arnold* v. *Ruggles,* 1 R. I. 165, 167, 168, in considering the nature of a share of stock, said: 'Is a share then, thus made up, to be deemed real estate, or as necessarily partaking of the realty? A share must pass one way or the other, as an entire thing. It cannot be resolved into the elements of which the estates of the corporation consist, and a part pass to the heir and a part to the executor, without destroying it, and with it the whole concern. It is an entirety, and must be either real or personal. And which is it? It will not do to make the property of the corporation a criterion, for the property of almost every corporation is more or less mixed. We must make the share itself, those rights which constitute its beneficial interests, the criterion. Its right then to receive a dividend of the whole concern, whether real or personal, is the interest by which it is to be judged.' This is a clear and satisfactory statement of the attributes of a share of stock.

"It would be incongruous and impossible, in conducting the affairs of a joint-stock association, in view of the fact

that it is allowed to issue stock, to hold, as the respondent contends, that, notwithstanding the articles of association provide that neither the death nor the transfer of the interest of any shareholder shall work a dissolution of the association, or any interruption of its business, nevertheless, on the death of an associate, his interest in the real estate of the association must be deemed to descend to his heirs at law, and his interest in the personalty to pass under the statute of distribution.

"The principle that the stock of a joint-stock association is similar in its nature to that of a corporation has been recognized in a number of cases. *Waterbury* v. *Merchants' Union Exp. Co.*, 50 Barb. 157, 161; *Rice* v. *Rockefeller*, 134 N. Y. 174, 187, 17 L. R. A. 237; *People ex rel. Platt* v. *Wemple*, 117 N. Y. 146, 149. As to the nature of the stock of corporations, it has been frequently held that not only is stock personal property, but that it is so no matter what the character of the corporate property may be. *Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 179; *Weaver* v. *Barden*, 49 N. Y. 286; *Jermain* v. *Lake Shore & M. S. R. Co.*, 91 N. Y. 492; *Bradley* v. *Holdsworth*, 3 Mees. & W. 424; *Cook, Corp.*, par. 12. In *Re Bronson*, 150 N. Y., at p. 8, 34 L. R. A. 242, 44 N. E. 709, this court held that shares of stock actually represented undivided interests in a corporate enterprise, the corporation holding the legal title for the benefit of stockholders."

The reasoning of the court in that case applies, we think, with equal force to the facts of this, so that to hold that a beneficial certificate in a trust estate such as this is separable into the several classes of property owned by the corporation and that, at the death of the holder, part of his interest in it would descend to his heirs and part be vested in his personal representatives, would be a manifest absurdity. And the fact that Warburton himself regarded and treated the whole property, real and personal, as one and as personalty is in itself not without force and significance. 18 *C. J.* 17, 18.

Without prolonging this branch of the opinion it is sufficient to say that in our judgment William T. Warburton's interest in the trust estate was personal property, and as such in terms excluded by JUDGE ROSE, in his opinion in the case brought by Thomas W. Perkins, receiver, in the United States District Court, from the jurisdiction of that court, and that therefore the power of the Circuit Court for Cecil County to assume jurisdiction of the trust estate, and to administer it for the benefit of persons interested therein, was not affected by the proceedings in the United States District Court.

The next objection is that the trustees had never acquired title to the Davis lot or the property of the Elkton Electric Light and Power Company and could therefore convey none.

It is conceded that William T. Warburton at the time of his death had acquired the whole title to the Davis lot, and that, while he completed his title after he executed the deed of trust, nevertheless before that time he undertook to convey that lot to the trustees with knowledge that they would mortgage it with other property to secure bonds with which he proposed to pay his debts. Under such circumstances, when he acquired the half interest from the Davis heirs he held it in trust for his grantees and he would have been, and his privies are, estopped from denying the title of the trustees to it.

In regard to the property of the Elkton Electric Light and Power Company, the record shows that it was used by William T. Warburton as part of the Gilpins Falls electric business for many years, and conveyed by him as such to the trustees of the Gilpins Falls Trust Estate, and represented by him as such to the Public Service Commission in his application for permission to make the deed of trust, and that it was included or intended to be included in the Union Trust Company mortgage, and that at that time he owned all the stock of the company and treated it and its property as his own.

What has been said of the Davis lot would therefore apply with equal force to this property, were it not that the issue of bonds secured by the mortgage to the Philadelphia Trust Company has not been positively accounted for, but the lower court in its decree safeguarded the purchaser from any possible loss through any claim on account of them by requiring the legal successor of John S. Wirt, now deceased, the last trustee, to be made a party to the proceedings.

The next objection is that the court has not the power to decree a sale of the trust property before a final decree was passed in the case.

Section 222, article 16, C. of P. G. L. of Md., provides:

> "In all cases where a suit is instituted for the sale of real or personal property, or where from the nature of the case a sale is the proper mode of relief, the court, in its discretion, may order a sale of the property before final decree, if satisfied clearly by proof that, at the final hearing of the case, a sale will be ordered, and order the money arising from such sale to be deposited or invested, to be disposed of as the court shall direct by the final decree."

The second bill in the consolidated case unquestionably asked for a sale of the property, and the evidence clearly justified the expediency of an immediate sale, if the case was one in which the court must ultimately decree that the property be sold. The force of that exception depends upon whether the averments of either of the bills involved in the case with the proof are sufficient to confer jurisdiction upon the court. The first bill was in our opinion bad and the demurrer to it should have been sustained. It came under no recognized head or equitable jurisdiction known to the court. It was not a bill to foreclose, nor a bill *quia timet,* nor did it suggest any reason why the court should assume jurisdiction of the trust stronger than those which the court said in the case of *North. Cent. R. R.* v. *Keighler,* 29 Md. 572, were insufficient, nor was there anything stated in it to justify the appointment of receivers. The averments of the

second bill did however, in our opinion, state a case cogniz-
able in a court of equity. If they were true the trust prop-
erty was in this situation. William T. Warburton had died
insolvent, a Federal court had appointed receivers to take
charge of all his real estate; there was a real question as to
whether his interest in the Gilpins Falls Trust Estate was
realty or personalty; property used as an integral and es-
sential part of the plant stood in the name of a corporation
against which a judgment had been obtained and the judg-
ment creditor was about to seize that property to satisfy the
judgment, which would have had a disastrous effect upon
the trust property. These facts were in our opinion suffi-
cient to justify the trustee in applying to a court of equity
for aid and guidance in the administration of the trust, and
to justify the court in assuming jurisdiction of it.

After the court assumed jurisdiction, before the decree
authorizing a sale was passed, it became apparent that the
property must ultimately be sold. The interest on the bonds
became due and remained unpaid, and there was no fund
available from which it could be paid, the property was
being operated at a loss, it was in bad repair and inadequate
to the demands of the business, and could not without the
expenditure of a large amount of money be put on a paying
basis, and there was outstanding an unsatisfied judgment
against a subsidiary or constituent company in which was
vested the paper title to an essential part of its plant. These
facts were not only sufficient to authorize the court to direct
a sale of the property but they left no other course open.
And since all the conditions precedent to the operation of
the statute existed here, the lower court was authorized under
the authority conferred by it to direct a sale of the property.

The purchaser also objects that the court acted erron-
eously in refusing to ratify the sale made to it by the re-
ceivers for $75,000, but we cannot agree with that conten-
tion. The testimony, in our opinion, justified the court in
finding that the price offered was inadequate and the subse-
quent bid of the appellant confirmed that conclusion.

Without further prolonging this opinion, it is apparent from what has been said that we have found no error in the decrees and orders of the lower court appealed from and that they must be affirmed.

> *Orders appealed from affirmed, with costs*
> *to the appellees.*