HENRY A. WARBURTON et al. Trustees, et al. *v.* CLARENCE W. PERKINS, Trustee, et al.

*Receivership Proceedings—Quasi Public Service Corporation— Claims for Current Supplies—Payment from Service Charges—Priorities—Rights as Against Mortgage.*

A mortgage deed of trust securing bonds does not give a lien in favor of the bondholders upon the current income from the mortgaged property.                         p. 309

Property owned by individuals or unincorporated associations, which has been dedicated to and used for a public service, and is subject in all respects to the same supervision and control in the operation of its business as a corporation operating the same business would be, is subject to the same general rule as applies to the property of such a corporation, that claims for current supplies are entitled to a preference over other unsecured claims in the distribution of funds arising from the collection of service charges during the receivership.

pp. 310, 311

The fact that a deed, by which a plant for the manufacture and sale of electric current was conveyed to trustees, to be held and operated by them for the benefit of the holders of certain beneficial certificates, provided that the trustees should be entitled to compensation from the corpus of the trust estate, its avails or accretions, did not give to such trustees a lien for their services superior to that of a mortgage on the plant, subsequently executed by them as trustees.                              pp. 311, 312

Persons who loaned money to trustees holding title to a plant supplying electric current, in order to enable such trustees to pay interest on a mortgage of the plant executed by them, are not entitled to any preference in the distribution either of the income accruing during a receivership or of the proceeds of the sale of the plant.                              p. 312

One supplying coal for the operation of a public service plant more than nine months before the appointment of receivers therefor is not entitled to priority in the distribution of assets.
p. 312

*Decided April 7th, 1926.*

Appeals from the Circuit Court for Cecil County (WICKES and KEATING, JJ.).

Claims by Henry A. Warburton and J. Wesley McAllister, Trustees, and others, against a fund, arising from the sale of certain mortgaged property, in the hands of Thomas W. Perkins and J. Wesley McAllister, Receivers. From a decree disallowing such claims, the various claimants separately appeal. Affirmed.

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Joshua Clayton,* for the appellants; *James F. Evans* also filing a brief on behalf of Stanley Evans, appellant.

*E. P. Keech, Jr.,* and *John T. Tucker,* for Clarence W. Perkins, trustee under the mortgage, and certain bondholders, appellees.

OFFUTT, J., delivered the opinion of the Court.

Thomas W. Perkins and J. Wesley McAllister, receivers, reported to the Circuit Court for Cecil County a sale of the real and personal property, rights and franchises, constituting the business and property of the Gilpin's Falls Hydro-Electric Company, hereinafter referred to as the "trust estate," as a going concern, to the Elkton Electric Company, Incorporated, at and for $100,000, and that sale was by that court finally ratified and confirmed on May 21st, 1923. The proceeds of the sale were brought into that court by the receivers, and subsequently distributed by an auditor's account. That account, which was finally ratified and confirmed, directed that the receivers retain $15,000 to await the disposition of the claims of certain enumerated creditors, all of which had accrued prior to the appointment of the receivers, except the bill for office rent filed by Thomas W. Perkins and J. Wesley McAllister, in their individual capacity.

The sum of $15,000, so retained, included $2,095.66 collected by the receivers and representing service charges for electricity sold and distributed to patrons prior to November 1, 1922, the date of the beginning of the receivership.

It appears from the proceedings in *Elkton Electric Company v. Perkins,* 145 Md. 224, that the property sold was subject to the lien of a mortgage deed of trust from Henry A. Warburton and another to the Union Trust Company of Maryland, dated October 10th, 1921, to secure bonds afterwards actually issued, having a par value of $125,000, and it further appears that the proceedings in this case were referred to the auditor of the Circuit Court for Cecil County, who was directed to notify all persons interested in such undistributed fund of such reference, and to take such testimony as might be offered concerning their claims.

Among the claims filed against the fund were these: Kirk E. Gifford, J. Wesley McAllister, John W. Scott and Omar D. Crothers "on a note given by Charles E. Warburton and Henry A. Warburton, trustees of the Gilpin's Falls Hydro

Electric Trust Estate, to Kirk E. Gifford, J. Wesley McAllister, John W. Scott and Omar D. Crothers for $2,000, and dated Elkton, Md., May 31st, 1922"; Standley Evans, "For $565.39 for coal delivered between October 15, 1921, and October 19, 1922, * * * subject to the credits appearing on the statement of account," and Henry A. Warburton and J. Wesley McAllister, trustees, for $1,000 for their services as trustees.   These claimants contend that their respective claims are entitled to priority over the bonds secured by the mortgage deed of trust or at least to a preference over the general creditors of the trust estate in the distribution of the fund arising from income therefrom in the hands of the receivers, while the trustee who represents the bondholders under that deed denies that they are entitled to any such preference.   These conflicting contentions grow out of these facts, which appear either from the record in this case, or from papers filed in *Elkton Electric Company v. Perkins, supra,* which counsel have agreed are to be taken as part of this record.

On September 20th, 1921, William T. Warburton of Elkton, Cecil County, Maryland, owned the Gilpins Falls hydro-electric plant, located in Cecil County, which was engaged in the manufacture and sale of electric current, and on that day he and his wife conveyed it to Charles W. Warburton and Henry A. Warburton, trustees, to hold and operate it for a period of twenty-one years, for the benefit of the holders of certain beneficial certificates for which it provided, with full power to sell, lease or mortgage it.   On October 10th, 1921, these trustees executed a mortgage deed of trust to the Union Trust Company of Maryland, on the property held by them as trustees, to secure an issue of bonds of the par value of $750,000, of which $125,000, under the sanction of the Public Service Commission of Maryland, were to be forthwith issued.   Subsequently, Charles E. Warburton resigned as trustee under the deed of September 20th, 1921, and J. Wesley McAllister was substituted for him, and Clarence W. Perkins was appointed trustee in the place of the Union Trust Company, to execute the trusts created by the

mortgage deed of trust.    William T. Warburton, the equit-
able owner of the hydro-electric plant, died insolvent and on
April 19th, 1922, Thomas W. Perkins, Henry L. Constable
and Henry A. Warburton were appointed receivers of the
real estate of which he died seised by the United States
District Court for the District of Maryland.    On September
21st, 1922, the Circuit Court for Cecil County assumed
jurisdiction of the trust created by the deed of September,
1921, and on November 21st, 1921, Thomas W. Perkins and
J. Wesley McAllister were appointed receivers of the Gil-
pin's Falls Hydro-Electric Trust Estate. Those receivers hav-
ing been authorized to sell all the property of that estate
reported a sale thereof for $100,000 to the Elkton Electric
Company, which was finally ratified on May 21st, 1923.
The proceeds of that sale were brought into that court and
paid over to the holders of the bonds, aggregating in their
par value $125,000, issued under the mortgage deed of trust,
excepting, however, the sum of $15,000, which was retained
to abide the disposition of certain claims filed by creditors
of the estate as stated above.

Testimony in connection with those claims was taken be-
fore the auditor and he filed his second report, allowing the
claims of the appellants in these three cases.    Exceptions
filed to that account were sustained, and the auditor directed
to disallow the claims, which was accordingly done, and from
that order these appeals were taken.

In addition to what has been stated, it was shown by the
evidence adduced in the case, that the claim of Gifford and
others was based upon a loan made to the trustees of the
Gilpin's Falls Hydro-Electric Trust Estate to enable them to
pay overdue dividends on the $125,000 issue of bonds, that
the claim of Evans was for coal furnished on and prior to
January 12, 1922, to keep the plant in operation, and that
the claims of the trustees, Warburton and McAllister, were
for services to the trust estate prior to the appointment of the
receivers in November, 1921.    It further appears that the
estate is insolvent, that in no case can the bondholders receive
the full amount of their bonds, and that any payments made

to the appellants will be from funds which would otherwise be applied on account of the amount due on the bonds. or to the payment of the claims of creditors who furnished current supplies to the trust estate.

In connection with these facts, we will now deal with the claims of the several appellants in the order in which they appear on the docket.

No. 18 involves the claim of Henry A. Warburton and J. Wesley McAllister for services rendered the trust estate prior to the appointment of receivers. In passing upon this and other claims the lower court adopted the theory that "in the determination of the question thus presented, the Gilpin's Falls Hydro-Electric Trust Estate must be treated as a quasi-public corporation, for while it is not in fact an incorporated body and has been called a Massachusetts trust to distinguish it from the usual trust, as known in Maryland, its business was that of a public service corporation, and the rights and priorities of creditors must be governed by the law applicable to such corporations." Whilst no one of the claims involved in these appeals, for reasons hereafter stated, can be said to fall within the term current expenses, yet that conclusion of the lower court becomes important for this reason: The mortgage deed of trust did not create a lien in favor of the bondholders on the current income of the trust estate. *First Nat. Bk. v. Lindenstruth,* 79 Md. 136; *Crocker v. Hopps,* 78 Md. 260. Funds derived from that source, therefore, were subject to the claims of unsecured creditors. And if the claims of some of such creditors, sufficient in amount to absorb the whole of such fund, were preferred over the balance of such claims, those holding such deferred claims would be injured, by being deprived of the opportunity of participating, with the preferred creditors, in a distribution of such funds, in which all the claimants would be treated as general creditors. For that reason it is important to determine whether the conclusion of the lower court is correct. If the trust estate is to be dealt with as a public service corporation would be under like conditions, then the court was clearly right in subjecting the fund

arising from collections by the receivers for service charges to liens in favor of creditors furnishing current supplies. But if it is to be treated as an individual engaged in a private business, the rule would be otherwise, because at common law all unsecured creditors would be entitled to have the fund applied *pro rata* to the satisfaction of their several claims without preference or priority. 32 *C. J.* 892.

The severity and the rigidity of that rule has been modified, however, in cases where the court has been called upon to deal with the claims of creditors who have furnished current supplies to a corporation dedicated to a public service, to the extent that it has given such claims a preference over other unsecured claims in the distribution of funds arising from the collection of service charges during the receivership.

*Fosdick v. Schall,* 99 U. S. 235, is one of the earliest cases recognizing that exception from the general rule. And in that case the court, although it was dealing with a railroad mortgage, based its decisions upon reasons which would apply with equal force to a mortgage of any property dedicated to a public use. It was said in that case that "the business of all railroad companies is done to a greater or less extent on credit. This credit is longer or shorter, as the necessity of the case requires; and when companies become pecuniarily embarrassed, it frequently happens that debts for labor, supplies, equipment and improvements are permitted to accumulate, in order that bonded interest may be paid and a disastrous foreclosure postponed, if not altogether avoided. In this way the daily and monthly earnings, which ordinarily should go to pay the daily and monthly expenses, are kept from those to whom in equity they belong, and used to pay the mortgage debt. The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment and useful improvements. Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the

income. If for the convenience of the moment something is taken from what may not improperly be called the current debt fund, and put into that which belongs to the mortgage creditors, it certainly is not inequitable for the court, when asked by the mortgagees to take possession of the future income and hold it for their benefit, to require as a condition of such an order, that what is due from the earnings to the current debt shall be paid by the court from the future current receipts before anything derived from that source goes to the mortgagees." That reasoning has since been approved in a number of cases, collected in 10 *Rose's Notes* (Revised Edition), 699, and in *Citizens Trust Co. v. National Equipment Co.*, 41 L. R. A., N. S. 704, and was adopted by this Court in *Homer v. Balto. Refrigerating etc. Co.*, 117 Md. 411, and extended to all *quasi* public service corporations. And we can perceive no logical reason why the same rule should not apply with equal propriety to property owned by individuals or unincorporated associations, which has been dedicated to and used for a public service, and is subject in all respects to the same supervision and control in the operation of its business as a corporation operating the same business would be, and we concur therefore in the conclusion reached by the learned trial court. And as it is not contended that the claims of current supply creditors allowed by the court were not properly allowed, and as those claims aggregated in amount more than the income collected by the receivers, the question is whether the claims of the appellants are entitled to be preferred to the lien of the mortgage, or whether they should be regarded as claims for current supplies, and as such entitled to share equally with other claims allowed by the lower court and to participate in the distribution of the income in the hands of the receivers, or whether they are merely claims of general creditors.

It is conceded that the claim immediately under consideration is not for current supplies, and is not therefore entitled to a preference on that ground, but it is contended that, since the deed of trust, of September 20th, 1921, provided that the trustees should be entitled to compensation

from the corpus of the trust estate, its avails or accretions, that in some manner not clearly apparent they have thereby secured a lien for the value of their services, superior to that of the mortgage under a mortgage which they executed. No authority for that proposition has been cited, and we have found none. Manifestly, a mortgagor cannot assert a lien in derogation of his own grant, and we entirely concur in the ruling of the lower court rejecting this claim.

The claim of Messrs. Scott, McAllister, Gifford and Crothers was based on a promissory note dated May 21st, 1922, and it appears from the evidence that it was given to raise funds to pay dividends on the bonds, and that the claimants knew that. That was a mere loan, and the lenders became general creditors of the trustees, and nothing more, and as such were not entitled to any preference in the distribution either of the income or the proceeds of the sale of the corpus of the estate. The proposition that one lending money to a mortgagor to pay the interest on his mortgage debt thereby secures a lien superior to that of the mortgagee cannot in our judgment be sustained. Nor are they entitled to share as preferred creditors in the distribution of the income, for from what has already been said that fund was devoted to the payment of creditors who furnished current supplies necessary to the continued operation of the trust estate, and was not sufficient for that purpose, and we do not feel that these claimants can properly be classified as such creditors.

No. 22 involves the claim of Mr. Standley Evans for coal furnished the trust estate on and prior to January 12th, 1922. The trial court held that that was too remote to permit it to hold that the coal was for current supplies, as it was supplied more than nine months before the appointment of receivers, and we have discovered nothing in the record to justify us in disturbing that conclusion.

For the reasons stated the decree appealed from will be affirmed.

*Decree affirmed, with costs.*