### FORD *v.* LORET, ET AL.

[No. 374, September Term, 1969.]

*Decided May 7, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Harold A. Sakayan,* with whom was *James Mcl Henderson* on the brief, for appellant.

*Louis H. Cohen* for appellees.

BARNES, J., delivered the opinion of the Court.

The sole question presented to us in this appeal is whether or not the Circuit Court for Montgomery County (Shearin, J.) erred in granting a summary judgment in favor of the appellees, Benjamin Loret, Irene B. Loret, Wallace M. Taylor, Robert S. Circosta, Mary Ann Circosta, Francis R. MacKenzie, Irving Jaffe, Paul S. Jaffe and Helen A. Jaffe, plaintiffs below, for $80,400.97 against the appellant, Jacqueline I. Ford, defendant below, an accommodation endorser upon six promissory notes in which the plaintiffs were payees. The trial court was apparently of the opinion that the affidavits and ex-

hibits filed by the defendant did not raise a genuine issue of a material fact and that the plaintiffs were entitled to judgment as a matter of law.

The affidavits and documents filed in opposition to the motion of the plaintiffs for summary judgment indicate the following: Prior to October, 1967, the Allen Townhouse Corporation (ATC) owned a seven and one-half acre tract of land in Reston, Virginia, on which the applicable zoning permitted the erection of townhouses. This land was subject to a first deed of trust on which approximately $78,000 was due and in default. In October, 1967, the property was being advertised for sale in a foreclosure suit. The plaintiffs were the stockholders of ATC. An arrangement to re-finance the deed of trust was agreed upon and the plaintiffs agreed to sell their stock interest in ATC to the Edward Allen Real Estate Corporation (EAC), the stock of which corporation was owned by Edward A. and Shirley D. Michalski, his wife. On October 19, 1967, the parties executed an agreement setting forth this sale and the terms and provisions of the agreement. By the written agreement the plaintiffs were each to be given a promissory note by EAC for their respective stockholdings in ATC, the six notes aggregating $56,-750 on their face. The notes were to bear interest at six percent per annum, payable every six months from the date of the notes and were to be payable 18 months from the date of execution. The notes were to be endorsed by Mr. and Mrs. Michalski and by Jacqueline I. Ford, the appellant, as accommodation endorser. The proposed lender, Berger & Company, a Maryland Corporation, had required the personal endorsement of Mr. and Mrs. Michalski as well as of Mrs. Ford, as a person substantial enough financially to protect their investment. Mrs. Ford also agreed to pledge a $50,000 note which she held as additional security to Berger & Company. Paul D. Scanlon, a member of the Virginia Bar, and one of the affiants, represented Mrs. Ford, EAC and the Michalskis in the transaction.

Incorporated into the written agreement of October 19,

1967, were two letters, dated October 5 and October 10, 1967, respectively, from Mr. Scanlon to Hugh Marsh, counsel for the plaintiffs, in regard to Mrs. Ford's financial status. Paragraph 5 (c) of the written agreement then provided:

> "Further, the October 5, 1967 letter will be annotated with a statement signed by Jacqueline Ford and notarized to the effect that if any of the stated assets are sold before the notes are fully paid, the proceeds will be converted to certificates of deposit and placed in an account in the Security National Bank, or other local bank, and shall not be encumbered before the notes are fully paid. If at the maturity date of the notes the stockholders have not been paid the total amount due, securities considered acceptable by the stockholders or the certificates of deposit will be pledged by purchaser and/or Jacqueline Ford in an amount at fair market value equal to the outstanding indebtedness. If satisfactory terms for extension of the notes cannot be negotiated at or before that time, the pledged collateral will be liquidated to the extent necessary to satisfy the outstanding obligation to the stockholders."

The six notes were executed on October 23, 1967, in accordance with the written agreement and became due 18 months from that date, i.e., on April 23, 1969, as provided in the agreement.

At the time of the execution of the agreement an additional note in the amount of $6,750 was also executed to Benjamin J. Loret which was not endorsed by Mrs. Ford. The total face value of all of the notes was $63,500. The stock of ATC was transferred to EAC as provided in the agreement.

Paragraph 5 (d), subparagraphs 1, 2 and 3 in regard to payment of the notes provided:

> "1. It is specifically understood between the

parties that purchasers shall have the right to make incremental partial payments on the notes.

"2. The first payment shall not be made until the first townhouse to be built on the property owned by Allen Townhouse Corporation is sold and title transferred to the purchaser thereof. The payment made as each townhouse is settled will be in an amount computed as a percentage of the total face value of stockholder notes, in which the numerator will be the selling price of the particular house settled and the denominator the aggregate total selling price of all thirty-seven (37) houses.

"3. The final payment will be made not later than the date the last townhouse is settled or on the due date of the notes, whichever occurs earlier. In any event, all indebtedness will become due and payable at maturity of the notes."

The agreement was signed by Benjamin J. Loret as agent for all of the stockholders of ATC.

Not long after the transfer of the stock of ATC to EAC, Mr. and Mrs. Michalski, the new developers of the land, encountered financial difficulties in its development, left Virginia and went to California. Mr. Scanlon, pursuant to a voting trust agreement, assumed control of EAC and ATC and then proceeded to look for a purchaser for the property. He communicated with two persons interested in a possible purchase of the tract; and on March 16, 1968, a meeting was held with several of the plaintiffs, Mr. Scanlon and the two prospective purchasers, John Veatch and William Anderson. At this meeting the plaintiffs were asked for an extension of time on the original notes in return for which the new purchasers offered to develop the land, suggesting a choice of stock in the new venture or a new note by the prospective purchasers of the land. It was ultimately agreed that a new note would be given to the plaintiffs by the prospective purchaser, Planned Community Associates, Inc. (PCA), to

conform to the terms originally agreed upon in the original notes but to be payable two years from its date. PCA on September 19, 1968, authorized the execution of a new note for $63,500 payable to Benjamin J. Loret as trustee for the plaintiffs, with interest at 6% per annum and with a 15% of principal and interest provided for as an attorney's fee if placed in an attorney's hands for collection. This note was forwarded to counsel for Mr. Loret by Mr. Scanlon, who was president of PCA, by his letter of October 14, 1968, which stated:

> "In accordance with the directions given to me by Ben Loret and your telephone request of Friday, October 11, 1968, I am enclosing herewith a promissory note executed by Planned Community Associates, Inc. in the amount of $63,500.00, payable to Allen Townhouse Corp. at the rate of 6% per annum for two years.
>
> "The note is endorsed by Allen Townhouse Corp., payable to Benjamin J. Loret as trustee for the benefit of certain enumerated individuals therein.
>
> "This note is the subject of the agreement reached with Ben Loret and his associates. It is my understanding that upon receipt of the funds due under this note he will disburse them pro rata amongst the holders of the Edward Allen Real Estate Corp. according to the tenure of those instruments.
>
> "There seems to have been some question concerning the negotiability of this note and I understood that your clients had as a requirement that the note be negotiable out of the Allen Townhouse Corp. I do not know where your clients got a different impression since our discussion had always presumed that the note could be endorsed by Allen Townhouse Corp. to your clients.
>
> "I regret the delay in delivering this note as I know your clients have been most anxious to

116

obtain it for the sake of their own security. Internal problems with the unavailability of one of the principals caused the delay.

"I am glad that we were able to reach an amicable arrangement in this matter."

In his affidavit, Mr. Scanlon stated:

". . .the original obligations of Edward Allen Real Estate Corporation made payable to the plaintiffs, including a note not the subject of the suit captioned Loret, et al vs. Ford, were extended in their maturity date; the terms of payment remained unchanged in that payment was to be made out of the proceeds of the sale of each house and additional security for this extension was a note in the amount of $63,500.00 endorsed to Benjamin J. Loret as trustee, etc. The new maturity date was the maturity date of the said PCA $63,500.00 note."

Mr. Scanlon also stated in his affidavit that he acted as attorney for Mrs. Ford, ATC, EAC and the Michalskis in connection with the "transaction which took place in a series of events during the month of October, 1967." He further indicated that Mrs. Ford requested him to terminate his representation of her on June 29, 1968, and confirmed the termination of his employment by her letter of July 2, 1968.

The secretary of PCA, John W. Veatch, (one of the two new purchasers) in his affidavit stated it was his understanding as an officer of PCA, prior to the execution of the $63,500 note, that the note would be accepted by the plaintiffs in consideration of the extension of time granted on the original notes and that the new $63,500 note would set the outside limits on the extension of time granted. He further stated that the original obligations would be paid out of the proceeds of sale of each townhouse constructed on the property; that no profit would be taken from the venture until those obligations were

met; that his primary interest in obtaining the extension was to prevent the possibility of a disturbance in the townhouse development; and, that at no time did he have any doubt that the extension of time had been granted since those attending the original conference had stated in his presence that they had no choice but to go along with the new plans for development, a prerequisite to which was the extension of time of the original obligations.

The plaintiffs in their affidavits in opposition to those mentioned have denied that any extension was granted.

In our opinion, the affidavits and documents stated material issues of fact which required the lower court to proceed with a trial on the merits. It was error for the lower court to grant a summary judgment for the plaintiffs so we must reverse the order of the lower court granting summary judgment and remand the case to the trial court for a trial on the merits, retaining in the meantime, however, the lien of the judgment entered pending the outcome of the trial on the merits.

Rule 610 a 1 of the Maryland Rules of Procedure provides:

> "In an action, a party asserting a claim, whether an original claim, counterclaim, cross-claim, or third-party claim, or a party against whom a claim is asserted, may at any time make a motion for summary judgment in his favor as to all or any part of the claim on the ground that there is no genuine dispute as to any material fact and that he is entitled to a judgment as a matter of law."

As Judge Singley, for the Court, in the recent case of *Lipscomb v. Hess,* 255 Md. 109, 119, 257 A. 2d 178, 183 (1969) stated:

> " 'The function of the summary judgment procedure is not to try the case or decide issues of fact. It is merely to determine whether there is

an issue of fact to be tried and if there is none,
to cause judgment to be rendered accordingly.'
*Tellez v. Canton R.R. Co., supra,* 212 Md. at 430,
129 A. 2d at 813"

Even if the underlying facts are not disputed but are susceptible of more than one inference, the party against whom the inference is sought to be drawn, is entitled to the inference most favorable to his contention when the court is considering a motion to grant a summary judgment. *Reeves v. Howar,* 244 Md. 83, 222 A. 2d 697 (1966).

The facts stated in the affidavits of Mr. Scanlon and Mr. Veatch were alleged to be within their personal knowledge and in regard to which they were competent to testify. These facts and the facts appearing in the attached documents, together with the reasonable inferences which might be drawn therefrom in favor of Mrs. Ford, *could,* if believed and accepted by the trier of facts in a trial on the merits, be found to establish a request for an extension of time of payment of the original notes, why the request was made, who were present at the conference at which the request for extension was made, the method agreed upon for the extension of time, the consideration to be offered for the extension of time by the plaintiffs, the execution of the PCA note for $63,500 (the total face amount of the original notes) and its delivery to counsel for Mr. Loret, as trustee for himself and the other plaintiffs.

Inasmuch as the present case is between parties to the original notes, there is no question of holders in due course which might cut off an exploration into the equities between the parties. It is well settled that the time of payment of a promissory note may be extended by agreement of the parties subsequent to the execution of the note. *Nussear v. Hazard,* 148 Md. 345, 129 A. 506 (1925). The extension of time may be accomplished by entering into a valid contract upon sufficient consideration. See Britton, "Bills & Notes," 1961 (2nd ed.), § 293; 10 C.J.S., "Bills & Notes," § 265 (a) et seq.

If Mrs. Ford did not know of the alleged extension of time or consent to it—and it is alleged in Mr. Scanlon's affidavit that he had been definitely discharged by her as counsel on July 2, 1968, prior to the alleged extension of time for paying the original notes—she could have a defense that she, as an endorser, was discharged from liability.

As our predecessors stated in *Hunter v. Van Bomhorst & Co.*, 1 Md. 504 (1851) :

> "There is no difficulty in laying down the general rule of law upon this subject: it is, that where the holder of a promissory note or bill of exchange enters into an agreement, founded on a valuable consideration with the drawer, to give him further time for payment, without the assent of the endorsers, they will thereby be released from their liability to pay the same."
>
> \* \* \*
>
> "In the case of *Gould v. Robson*, 8 East. 576, which is regarded in all the books as a leading case on this subject, the holder of a draft took a new bill from the acceptor, and *was to keep the original bill as security, till the other was paid*. Lord Ellenborough upon these facts said: 'This is an agreement, that in the meantime the original bill shall not be enforced; such as is at least the effect of the agreement and therefore I think time was given.' " (Emphasis in the original.)
>
> (1 Md. at 513-514)

The appellees earnestly argued that it does not definitely appear that there was any request by EAC, the maker, for an extension of the time for paying the original notes and that no legal purpose was shown in regard to why PCA desired an extension of time for the maker, EAC, to pay the original notes, inasmuch as PCA purchased the land from ATC and was neither responsible nor obligated to EAC to pay the notes to the plaintiffs.

Assuming for the argument, that such a request would be required, Mr. Scanlon in his affidavit indicates that he actively participated in the negotiations and obtention of the alleged extension agreement and that he had acted as the attorney for EAC during the original transaction in which the original notes were given. There is nothing in his affidavit to indicate that his representation of EAC had terminated, although there is a statement of the termination of his employment as attorney for Mrs. Ford at a certain time. The reasonable inference is that Mr. Scanlon was acting as attorney for EAC, as well as for others, in allegedly requesting and obtaining from the plaintiffs an extension of the time for payment of the original notes.

The appellees also urge upon us that the affiants indicate that portions of the facts alleged rest upon hearsay testimony, but we cannot say at this point in the proceedings that the persons who allegedly made the statements will not be available as witnesses at the trial on the merits and fully subject to cross-examination.

All of the matters in defense may, of course, be asserted and explored at the trial on the merits and in regard to their merit, we express no opinion.

> *Order granting summary judgment reversed and case remanded for a trial on the merits, the lien of the judgment to be retained in the meantime, pending the outcome of the trial on the merits, costs to abide the result in the lower court upon the trial on the merits.*