863 A.2d 952

Robert L. SERIO, et al.

v.

BALTIMORE COUNTY, Maryland.

No. 17, Sept. Term 2004.

Court of Appeals of Maryland.

Dec. 14, 2004.

Samuel M. Grant (William N. Butler of Howard, Butler & Melfa, P.A., of Towson), on brief, for petitioners.

Jeffrey Grant Cook, Assistant County Attorney (Jay L. Liner, County Attorney, of Towson), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, Judge.

Petitioner, Robert L. Serio, comes before this Court to challenge the Court of Special Appeals's affirmation of the trial court's summary judgment entered against him. Serio argues that Baltimore County's continued retention of firearms seized from his home and its refusal to restore the seized property to him through a designee or through a sale and remuneration to him because he is a convicted felon violates Article 24 of the Maryland Declaration of Rights and the provisions of Section 551(c) of Article 27 of the Maryland Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.). Based upon the circumstances of this case, we reverse the summary judgment entered in favor of the defendants in light of our decision that Serio retains a property interest in the firearms even though he cannot possess them.

## I. Background

### A. Facts

On October 8, 1998, the petitioner, Robert Serio ("Serio"), was driving with Stacy Corbin on York Road in Baltimore County when the car struck a guardrail and overturned. Miss Corbin was thrown from the car and died at the scene of the accident. Subsequently, Serio was charged with vehicular manslaughter, which is a felony in Maryland.[1] He pled guilty to one count of manslaughter by automobile and was sentenced on June 2, 1999, to six months imprisonment.

On the same day that Serio was sentenced, Officers Steven Russo and Robert Overfield of the Baltimore County Police Department applied for a warrant to search Serio's house and to seize "any firearms and any ammunition, boxes, receipts, or manuals relating to said firearms," based upon information that they had gleaned from Serio's estranged wife and a search of the Maryland Automated Firearms System. Serio was alleged to be a felon in possession of firearms in violation of Maryland Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Article 27, Section 445(d)(1)(ii).[2] The warrant was issued, and the officers searched Serio's home on June 3, 1999. The

---

1. Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27 § 388 provided in part:

 Every person causing the death of another as the result of the driving, operation or control of an automobile ... shall be guilty of a felony to be known as "manslaughter by automobile ..." and the person so convicted shall be sentenced to jail or the house of correction for not more than 10 years, or be fined not more than $5,000 or be both fined and imprisoned.

 Article 27, Section 388 was recodified without substantive change as Md.Code (2002), § 2–209 of the Criminal Law Article.

2. Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27 § 445(d) provided in relevant part:

 *Restrictions on possession—In general.*—A person may not possess a regulated firearm if the person:

 (1) Has been convicted of:

 * * *

 (ii) Any violation classified as a felony in this State.

 Article 27, Section 445(d) was recodified without substantive change as Md.Code (2003), § 5–133 of the Public Safety Article.

officers seized numerous firearms from Serio's home, including seven handguns, five rifles, a shotgun, a silencer, and ammunition. Ultimately, Serio was not charged with possessing firearms in violation of Section 445(d), but the County, nonetheless, has refused to return the firearms to him, or give them to a designee, or sell them and give Serio the proceeds.

## B. Procedural History

On July 20, 1999, Serio filed a five count complaint in the Circuit Court for Baltimore County naming the County and Officer Russo as defendants. The first three counts of the complaint were brought against the County challenging the seizure of the firearms and seeking a return of the property pursuant to Maryland Code (1957, 1996 Repl.Vol., 1998 Cum. Supp.), Article 27, Sections 551(a), (b), and (c).[3] In Count IV,

---

**3.** Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27, §§ 551(a), (b) and (c), stated in relevant part:

(a) If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it appears that the property taken [pursuant to the search warrant] is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued . . . said judge must cause it to be restored to the person from whom it was taken . . . However, if it appears that the property taken is the same as that described in the warrant . . . then said judge shall order the same [property] retained in the custody of the person seizing it or to be otherwise disposed of according to law.

(b) If the criminal case in which property of a person was seized pursuant to a search warrant issued under subsection (a) of this section is disposed of because of (i) an entry of nolle prosequi, (ii) dismissal, or (iii) acquittal, or if the State does not appeal . . . all property of the person, except contraband or any property prohibited by law from being recoverable, may be returned to the person to whom it belongs without the necessity of that person instituting an action for replevin or any other legal proceeding against the agency having custody of the property.

(c)(1) If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it is found that property rightfully taken under a search warrant is being wrongfully withheld after there is no further need for retention of the property, the judge must cause it to be restored to the person from whom it was taken.

Article 27, Sections 551(a), (b), and (c) were recodified without substantive change as Md.Code (2001), § 1–203 of the Criminal Procedure Article.

Serio requested damages from the County for any harm to the seized property. Serio also alleged a violation of his rights under Article 24 of the Maryland Declaration of Rights against Officer Russo in Count V for misconduct in obtaining and executing the search warrant used to seize the firearms from Serio's home.[4] Judge Lawrence Daniels of the Circuit Court for Baltimore County signed an order dated July 20, 1999, requiring the police department to preserve the property seized from Serio's home. The defendants were represented by the County Attorney's Office and together they filed a motion to dismiss the complaint for failure to state a claim, to which Serio filed an opposition.

A motions hearing was held in the Baltimore County Circuit Court on November 29, 1999, during which the trial court ordered the parties to submit memoranda of law concerning whether the firearms were contraband. The court also granted Serio leave to amend his complaint. Serio filed a First Amended Complaint, and Bruce Stanski was added as a plaintiff based upon the allegation that Stanski intended to purchase the seized firearms. Plaintiffs Serio and Stanski re-alleged all of the same counts against the County and Officer Russo that were alleged in the original complaint. Thereafter, the defendants, who still continued to be represented by the same counsel, filed a joint motion to dismiss the original Complaint and the First Amended Complaint for failure to state a claim. Judge Daniels held a hearing on February 7, 2000, to consider the defendants' motions and ordered the following:

1. That the Court grants summary judgment in favor of the Defendants on whether [Serio] had possession of the guns at issue;

---

4. Article 24 of the Maryland Declaration of Rights states:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgement of his peers, or by the Law of the land.

2. That the Amended Complaint against Defendant Officer Russo is dismissed with prejudice;

3. That the case is dismissed as to Defendant Baltimore County, subject to [Serio] amending the existing complaint which is to be filed within 15 days of February 7, 2000.

Pursuant to the Circuit Court's ruling, Serio and Stanski filed a Second Amended Complaint, in which they alleged in Counts I–III claims against the County under Section 551 and sought damages for any lost or damaged property in Count IV. They also re-alleged a claim against Officer Russo in Count V for a violation of the Maryland Declaration of Rights, "by taking actions inconsistent with [Serio's] rights of due process...." A new claim against the County was added in Count VI alleging that Serio's rights had been violated under various articles of the Maryland Declaration of Rights.[5] Count VII against the County was also added based upon 42 U.S.C. § 1983 (1999),[6] for violating Serio's rights under the Fourth, Fifth, and Eighth Amendments to the United States Constitution.[7]

---

**5.** Count VI of the Second Amended Complaint alleged as follows:

a. [V]iolation of Article 19 by seizing [Serio's] property, and denying [Serio] any remedy at all, speedy or otherwise,

b. [V]iolation of Article 21 by determining that [Serio] is guilty of a criminal act (Article 27 § 445(d), Annotated Code) and by meting out punishment in the form of withholding [Serio's] property; yet in refusing or failing to indict or charge [Serio] ...,

c. [V]iolation of Article 24 by depriving [Serio] of his property, yet by failing to afford [Serio] judicial process with respect to the [Baltimore County's] seizure and/or retention of [Serio's] property, and

d. [V]iolation of Article 25 by conducting a de facto forfeiture of [Serio's] property....

**6.** 42 U.S.C. § 1983 (2000) states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

**7.** Specifically, Count VII of the Second Amended Complaint alleged violations of various U.S. Constitutional provisions against Baltimore County as follows:

The County, acting on behalf of both defendants, filed a request to remove the entire case to the United States District Court for the District of Maryland, and a motion for summary judgment on all of the claims in the Second Amended Complaint. After hearing arguments on the motion, Judge Catherine Blake filed an Order and Memorandum on July 20, 2000, granting the County's motion and dismissing Serio's claims for relief. *See Serio v. Baltimore County,* 115 F.Supp.2d 509 (D.Md.2000). Specifically, in her Memorandum Order Judge Blake, addressing the due process claims under Count VII of the complaint, determined that Serio had a property interest in the firearms and that the County had deprived Serio of that interest by retaining the firearms, but granted the County's motion to dismiss on the ground that Serio had not challenged the validity of Section 551, as violative of his due process rights. *Id.* at 516. The court reasoned that Serio did not make a facial challenge to the applicable statutes; instead, he challenged the County's execution of the statutes based upon due process. *Id.* The court reasoned that the County's actions in seizing the firearms and retaining them did not deny Serio his due process rights because the County at that point could retain the firearms in anticipation of a criminal prosecution. *Id.* at 517. Once the need to keep the firearms terminated, the court held that Serio's due process rights would then be implicated. *Id.*

Furthermore, Judge Blake noted that the County could retain the firearms unless Serio could prove that there was no further need for the County to withhold them under Section

a. [V]iolation of Plaintiff's [F]ourth [A]mendment right to be free from unreasonable search and seizure and to have a warrant issued only upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the things to be seized, for reasons stated . . . above,

\* \* \*

c. [V]iolation of Plaintiff's [F]ifth [A]mendment rights of due process, for reasons stated in Count VI section c [which references the due process clause of Article 24 of the Maryland Declaration of Rights] above, and

d. [V]iolation of Plaintiff's [E]ighth [A]mendment right to be free from excessive fines. . . .

551(c). *Id.* at 518. The additional federal claims against the County under Count VII alleging violations of the Fifth and Eighth Amendments to the United States Constitution also were dismissed, as well as all of the claims under Count VI of the Second Amended Complaint, which related to Articles 19, 21, 24 and 25 of the Maryland Declaration of Rights.[8] *Id.* at 520.

While the matter was pending in federal District Court, Serio noted an appeal to the Court of Special Appeals based upon the Circuit Court's dismissal of the First Amended Complaint. In an unreported opinion, *Serio v. Baltimore County,* No. 329 (Sept. Term 2000), the Court of Special Appeals dismissed the appeal because a final judgment had not been entered by the Circuit Court pursuant to Maryland Rule 2–602.[9]

After the case was remanded for entry of a final judgment, the defendants, still represented by the same counsel, filed a motion for summary judgment as to the First Amended Complaint, and Serio and Stanski filed an opposition together along with a motion for reconsideration of the Circuit Court's earlier ruling dismissing the First Amended Complaint. On

---

**8.** The claims relating to Articles 19 and 24 were dismissed insofar as those Articles related to the federal due process claims that were dismissed. We note that Article 19 has no federal counterpart. *See Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 618 n. 6, 630, 805 A.2d 1061, 1069 n. 6 (2002).

The court also dismissed the Article 21 claim because there was no criminal prosecution pending against Serio at that time, so that Article 21 was not implicated. The Article 25 claim was dismissed based upon the court's analysis of the Eighth Amendment claim. Finally, the court summarily dismissed Counts I–V of the Second Amended Complaint based upon the Baltimore County Circuit Court's earlier order dismissing those counts.

**9.** Rule 2–602 states:

(a) Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment.

August 6, 2001, the Circuit Court ruled on the defendants' motion and granted partial summary judgment in favor of the defendants "as to the issue of whether [Serio] had possession of the guns, which are the subject of the case." The trial court dismissed Stanski's claims to have the firearms returned to him as an agent of Serio, as well as the claims against Officer Russo. Finally, the Circuit Court dismissed the claims against the County subject to Serio amending his complaint to add a claim based upon the Eighth Amendment to the United States Constitution.

On August 29, 2001, the Circuit Court held a hearing on Serio and Stanski's motion for reconsideration and determined that Serio should amend his complaint to plead with specificity the items that were taken by Officer Russo during the search. The court entered an order, vacating its previous orders of February 7, 2000, and August 6, 2001, and allowing Serio to amend his complaint "consistent with the Court's instructions of August 29, 2001." Serio then filed a Third Amended Complaint re-alleging in Counts I–III violations of Section 551 and seeking return of the seized property to Stanski as his agent. In Count IV Serio sought damages against the County for any damaged or lost property, and he claimed a violation of Article 24 of the Maryland Declaration of Rights against Officer Russo in Count V for misconduct in obtaining the search warrant used to search Serio's home.

The defendants, represented by the County Attorney's Office, filed a motion to dismiss the Third Amended Complaint, and a hearing was held on March 25, 2002. During the hearing, Judge John Hennegan denied the motion to dismiss and determined that it was not ripe because there were "no affidavits, no exhibits, nothing," to support the motion. Thereafter, defendants, through their counsel, filed a motion for summary judgment on all counts, which was heard by Judge J. Norris Byrnes. In their motion, the defendants argued that there was probable cause to support the search warrant and that it would be against the law to return the firearms to Serio, a convicted felon. Furthermore, Officer Russo argued that his conduct in executing the warrant did

not violate Serio's due process rights under Article 24 of the Maryland Declaration of Rights. In opposition to the defendant's motion, Serio argued that the firearms were not contraband *per se* and that the County was required either to institute forfeiture proceedings or return the weapons.

On September 4, 2002, the defendants' motion for summary judgment was granted on all claims set forth in Counts II, III and V of the Third Amended Complaint, which were those claims related to Section 551(b)-(c) and Officer Russo. Judge Byrnes also entered a show cause order to determine whether any of the firearms should be returned to Serio under Section 551(a).

A show cause hearing was held on November 6, 2002, and Judge Christian Kahl ruled that the seized firearms and related items could not be returned to Serio or given to Stanski for disposal because doing so would allow "the defendant or claimant to profit by what he cannot possess legally." He ruled, however, that Serio could recover any items that were not firearms or related materials. An order was filed requiring the Baltimore County Police Department to retain the firearms until all appeals had been exhausted.

On December 12, 2002, Serio noted an appeal to the Court of Special Appeals based upon the Circuit Court's dismissal of the Third Amended Complaint. Thereafter, an Amended Order was entered on January 6, 2003, to establish a final judgment in this case.[10]

---

**10.** The Amended Order stated:
1. Count I [Restoration of property under Art. 27 Section 551(a)] is dismissed as to both Plaintiffs.
2. Although the parties believe that it was the intent of the Honorable J. Norris Byrnes, in his order filed September 12, 2002, with respect to Counts II and III, that the dismissal pertained to both Plaintiffs, in order to remove any doubt, it is ordered that Counts II [Return of property under Art. 27 Section 555(b)] and III [Restoration of property under Art. 27 Section 551(c)] are dismissed as to both Plaintiffs. (Count V [Constitutional Claim against Officer Russo] is not brought by Plaintiff Bruce Stanski).
3. Property not referred to in the order of November 13, 2002 shall be returned to Plaintiff Robert Serio.

In an unreported opinion, the Court of Special Appeals affirmed the Circuit Court's grant of the defendants' motion for summary judgment. *See Serio, et al v. Baltimore County, Maryland, et al.,* No. 2393 (Sept. Term 2002). The Court of Special Appeals, addressing Serio's claim that items, including the firearms, should be returned to him under Section 551(a) because the search warrant was invalid, held that the warrant was valid because it was not overly broad and was based in part upon untainted information. The court further explained that because seized items that were not named in the warrant had been returned, "Serio ha[d] already received all the relief to which he is entitled under Count I." [11]

The Court of Special Appeals also addressed Serio's argument that he retained a constitutionally protected property interest in the firearms. The court noted that Serio did not allege constitutional violations in his Third Amended Complaint. Rather, he relied upon reasoning from the federal district court's prior dismissal of the Second Amended Complaint, to claim a violation of his due process rights. The intermediate appellate court held that the trial court was correct in granting summary judgment on the due process claim because Serio did not properly raise this issue in his Third Amended Complaint, while it was before that court. The court further stated that even if Serio had properly alleged constitutional due process violations against the County in his Third Amended Complaint, his argument would fail because he could not lawfully possess the weapons and did not have a recognized property interest in the firearms.

With respect to the allegations in Count II involving Section 551(b) (returning seized property), the intermediate appellate

4. As the court's order to the County police that the property be preserved remains open; as to Count IV [Damage to property] remains open, the Court certifies finality as to Counts I, II, III, and V, under Rule 2–602; and that there is no reason for delay, so that Plaintiffs may pursue appellate rights as to Counts I, II, III and V.

11. Before us, Serio has not challenged the Court of Special Appeals's decision upholding the trial court's grant of summary judgment as to Count I of the Third Amended Complaint.

court held that Section 551(b) applies to situations where the items were seized from persons charged with illegal possession of weapons. According to the court, because Serio had not been charged with possession of weapons, Section 551(b) was not applicable. The court also agreed with the County that Count III of Serio's complaint relating to Section 551(c) (restoring wrongfully retained property), should be dismissed because Serio could not lawfully possess the weapons and the weapons must be returned to the person "from whom [they] were taken."

The Court of Special Appeals addressed the question of whether the Circuit Court erred in dismissing Count V, where Serio alleged that Officer Russo had made a false statement on the warrant application and had seized items that either were not mentioned in the warrant or were not contraband, in violation of Article 24 of the Maryland Declaration of Rights. The Court of Special Appeals held that the standard for assessing an officer's conduct in obtaining and executing a search warrant is a "shock the judicial conscience" standard, and that Officer Russo's conduct fell short of egregious behavior that would warrant liability; thus, the trial court was correct in granting summary judgment as to Count V.[12]

Serio filed a petition for a writ of certiorari in this Court in which he asserted that several constitutional provisions applied, including Article 24 of the Maryland Declaration of Rights. This Court was asked to consider the following questions:

1. Whether the Court of Special Appeals erred in construing the verbiage of Article 27 Section 551(c) that seized property shall be "restored to the person from whom it was taken" as precluding a court from ordering property to be handed over to an agent of the owner of the property, as such a narrow construction of the statute precluded its remedial purpose.

---

12. Serio did not challenge the Court of Special Appeals's decision upholding the trial court's grant of summary judgment as to Count V of the Third Amended Complaint.

2. Whether the Court of Special Appeals erred in approving a common law forfeiture of appellant's property, based upon two reported decisions of the Eighth Circuit of the U.S. Court of Appeals concerning return of seized property under federal law; rather than upon Maryland law of forfeiture, which precludes common law forfeiture.

We granted the petition and issued the writ of certiorari, *Serio v. Baltimore County, Maryland,* 381 Md. 324, 849 A.2d 473 (2004), and shall reverse the judgment of the Court of Special Appeals.

## II. Standard of Review

 This Court reviews an order granting summary judgment *de novo. O'Connor v. Baltimore County,* 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004); *Todd v. MTA,* 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707, 721 (2002); *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715, 720 (2002); *see Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194, 199 (2001). In so doing, we must determine, initially, whether a dispute of material fact exists. Md. Rule 2–501(e) (2002); *see O'Connor,* 382 Md. at 110–11, 854 A.2d at 1196; *Todd,* 373 Md. at 154, 816 A.2d at 933; *Beyer,* 369 Md. at 359–60, 800 A.2d at 721; *Schmerling,* 368 Md. at 443, 795 A.2d at 720; *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206, 209 (2001). " 'A material fact is a fact the resolution of which will somehow affect the outcome of the case.' " *Todd,* 373 Md. at 155, 816 A.2d at 933 (quoting *Matthews v. Howell,* 359 Md. 152, 161, 753 A.2d 69, 73 (2000)). The facts properly before the court as well as any reasonable inferences that may be drawn from them must be construed in the light most favorable to the non-moving party. *O'Connor,* 382 Md. at 111, 854 A.2d at 1196; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118, 127 (2000). If the record reveals that a material fact is in dispute, summary judgment is not appropriate. *O'Connor,* 382 Md. at 111, 854 A.2d at 1196; *Todd,* 373 Md. at 155, 816 A.2d at 933;

*Okwa,* 360 Md. at 178, 757 A.2d at 127. If no material facts are disputed, however, then we must determine whether the Circuit Court correctly granted summary judgment as a matter of law. *See* Md. Rule 2–501(e); *O'Connor,* 382 Md. at 111, 854 A.2d at 1197; *Todd,* 373 Md. at 155, 816 A.2d at 933; *Beyer,* 369 Md. at 360, 800 A.2d at 721; *Schmerling,* 368 Md. at 443, 795 A.2d at 720.

## III. Discussion

 Serio argues that the Court of Special Appeals erred in holding that the trial court properly entered summary judgment against him on his claim to have the seized firearms restored to him under Maryland Code, Article 27, Section 551(c). In Serio's view, the language of Section 551(c) permits him to exercise his property interests in the firearms by allowing the property to be "restored" to him through an agent or delegate. Moreover, Serio contends that the Court of Special Appeals approved a common law forfeiture of the firearms by relying upon decisions of the United States Court of Appeals for the Eighth Circuit, rather than upon Maryland forfeiture statutes. In his brief, Serio also asserts that he was being deprived of his due process rights under Article 24 of the Maryland Declaration of Rights. During oral argument before this Court, Serio, when questioned, maintained that the County's continued retention of the firearms was a constitutional violation and that if he were to obtain the proceeds from a sale of the seized firearms, his property interests would be "restored."

The County contends, however, that the firearms were rightfully seized pursuant to a search warrant and are being properly withheld from Serio because he is a convicted felon and is precluded from taking possession of the firearms. The County further claims that the unambiguous language of Section 551(c) does not allow the firearms to be "restored" to Serio through an agent or delegate. Finally, the County argues that the statute governing forfeiture of firearms requires a conviction for possession of firearms and Serio has not been so convicted. At argument, the County's representa-

tive iterated that the County was keeping the firearms rather than selling them and returning their proceeds to Serio because Serio was prohibited from possessing the firearms.

▮▮▮▮ Article 27, Section 551(c), states:

(1) If, at any time, on application to a judge of the circuit court of any county or judge of the District Court, it is found that property rightfully taken under a search warrant is being wrongfully withheld after there is no further need for retention of the property, the judge must cause it to be restored to the person from whom it was taken.

Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27, § 551(c). When we interpret statutes, our goal is to "identify and effectuate the legislative intent underlying the statute(s) at issue." *Drew v. First Guaranty Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003) (quoting *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000)). As we have stated, the best source of legislative intent is the statute's plain language and when the language is clear and unambiguous, our inquiry ordinarily ends there. *Drew,* 379 Md. at 327, 842 A.2d at 6; *Beyer,* 369 Md. at 349, 800 A.2d at 715. Although the plain language of the statute guides our understanding of legislative intent, we do not read the language in a vacuum. *See Drew,* 379 Md. at 327, 842 A.2d at 6; *Derry,* 358 Md. at 336, 748 A.2d at 483–84. Rather, we read statutory language within the context of the statutory scheme, considering the "purpose, aim, or policy of the enacting body." *Drew,* 379 Md. at 327, 842 A.2d at 6; *Beyer,* 369 Md. at 349, 800 A.2d at 715; *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001) (quoting *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992)). When interpreting the language of a statute, "we assign the words their ordinary and natural meaning." *O'Connor,* 382 Md. at 113, 854 A.2d at 1198; *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998). We will "neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in a forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *O'Connor,* 382 Md. at 114, 854 A.2d at

1198 (quoting *Taylor v. NationsBank,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001)). Thus, the provisions must be read from "a commonsensical perspective to avoid a farfetched interpretation." *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001).

We begin with interpreting the language of Section 551(c). The General Assembly did not define in the statute itself what it means to "restore" property that has been wrongfully withheld. A review of the legislative history also is not helpful in discerning the meaning of "restoring" property under Section 551(c), because there is nothing in that history discussing the use of the term. It appears that the language of subsection (c) was derived from Section 551(a), which also states that property must be "restored to the person from whom it was taken." Subsection (a), added in 1958, *see* Ch. 74 of the Acts of 1958, is primarily concerned with the return of property that was not adequately described in the warrant underlying the seizure of the property or property that was seized without the existence of probable cause to issue the warrant. Later, in 1975, Section 551(b), containing similar language, "returned to the person to whom it belongs," was added as an additional way to have property returned when criminal proceedings against the property owner have ended. *See* Ch. 704 of the Acts of 1975. Subsection (c) was added in 1976, as a way to return property that had been properly taken under a search warrant but in circumstances in which the government had no further need to retain the property. *See* Chs. 194, 704 of the Acts of 1976.

Furthermore, this Court has not interpreted the meaning of the term "restored" within Section 551(c). Nevertheless, Serio contends that this Court's decision in *State v. Denten Corp.,* 288 Md. 178, 416 A.2d 271 (1980), accommodates an expanded definition of "restore." In *Denten,* the Baltimore City police executed a search and seizure warrant at Follies Bookstore, which was owned by defendants, Denten Corporation and Thomas Frank. *Id.* at 180, 416 A.2d at 273. During the search the police seized several "peep show" motion picture films and film projectors because they were allegedly being

shown without a license from the Maryland State Board of Censors ("Board"). *Id.* The defendants were convicted of showing unlicensed films, and they appealed, challenging the retention of the films. *Id.* The defendants argued that they could not be prohibited from distributing the films unless there had been a prior determination that the films were obscene, which had not occurred in the case. *Id.* at 181, 416 A.2d at 273. In addition, the defendants argued that because the seized materials were the only copies in their possession at the time of the seizure, the State must either return the film or allow the film to be copied for the purpose of submitting the film to the Board for review and licensing. *Id.*

This Court held that the State may not seize the only copy of a film as evidence of a licensing violation and then refuse to return the film or allow it to be copied for purposes of submitting the film to the Board for review and licensing. *Id.* at 186, 416 A.2d at 276. We explained that the seized film could be copied and delivered to the Board for review under the provisions of Section 551(c). *Id.* at 187, 416 A.2d at 276–77. We explored the meaning of the phrase "wrongfully withheld" and stated:

> With respect to the very narrow problem area under discussion, which assumes that the sole copy of a motion picture film has been seized, and which further assumes that the person from whom it was taken applies to have the sole copy delivered to the Board of Motion Picture Censors for review or desires to have a copy made for such a submission, we interpret Art. 27, § 551(c)(1) to permit honoring the request.

*Id.* at 187, 416 A.2d at 276–77. We then ordered the State to submit the copy seized to the Board for its determination.

*Denten* is inapplicable to the case *sub judice,* however, because the gravamen of that case was whether the seized film was rightfully taken as proof of distribution of unlicensed material. In *Denten,* the State "wrongfully withheld" the film when it refused to submit the film for Board review. The Board was not being given the films, as an agent of Denten

and Frank; rather, its determination was a vital element of the State's charges. While the present case also deals with whether the County has wrongfully withheld property, the similarities in the issues end before any discussion of restoration to an agent or a sale with remuneration to the property owner, as Serio contends. Restoration to an agent or sale were never implicated in *Denten*.

Serio also asserts that the Court of Special Appeals erred by approving a common law forfeiture in its reliance on decisions of the United States Court of Appeals for the Eighth Circuit. The intermediate appellate court held that the firearms could not be returned to Serio or a delegate or sold and proceeds returned to him because he was a convicted felon who could not lawfully possess the firearms. The court relied on two decisions of the Eighth Circuit Court of Appeals, *United States v. Bagley*, 899 F.2d 707 (8th Cir.1990), and *United States v. Felici*, 208 F.3d 667 (8th Cir.2000), for the proposition that convicted felons could not possess firearms, and that the firearms could not be sold or given to an agent.

To the extent that the Court of Special Appeals was interpreting the provisions of Section 551, we agree; our disagreement involves the failure on the part of the Court of Special Appeals to recognize that Serio retained a property interest in the firearms to which Article 24 of the Maryland Declaration of Rights may be applicable. The Court of Special Appeals was correct in its determination that Serio as a convicted felon could not possess the firearms. The court was incorrect, however, in not addressing whether Serio retained due process protection for his property interest in the firearms under Article 24 of the Maryland Declaration of Rights.[13]

### Article 24 of the Maryland Declaration of Rights

██ Although Section 551(c) is inapplicable, Serio did not lose his "property" interest in the firearms because he is a

---

**13.** The United States Court of Appeals for the Eighth Circuit in *Bagley* and *Felici* also did not address whether convicted felons may have due process rights in the firearms.

convicted felon, and he retains due process protection against wrongful retention of his property under Article 24 of the Maryland Declaration of Rights, which was the basis upon which Serio sued Officer Russo in the Third Amended Complaint.[14] A convicted felon's protected property interest in firearms that he can no longer legally possess has been recognized by the United States Court of Appeals for the Fifth Circuit in *Cooper v. Greenwood*, 904 F.2d 302 (5th Cir.1990), a suit brought under 42 U.S.C. § 1983. *Id.* at 305. In *Cooper*, the plaintiff, a convicted felon, pled guilty to receipt and possession of firearms under 18 U.S.C. § 1202(a), later 18 U.S.C. § 922(g), after the City of Greenwood, pursuant to a warrant, seized 201 firearms from the attic of an animal clinic operated by the plaintiff's son-in-law and later sold them at a public auction without prior court authorization. *Id.* at 304. The plaintiff instituted suit alleging violations of his rights under the Fourth and Fourteenth Amendments and sought to recover the value of the firearms. *Id.* The Court of Appeals for the Fifth Circuit, in reversing a grant of summary judgment against the plaintiff, held that "Cooper's claimed ownership interest in the firearms survived his criminal conviction and could not be extinguished without according him due process." *Id.* The court explained that seized property should be returned to its owner once the criminal proceedings have terminated, unless the property is contraband *per se*, that being "objects [that] are 'intrinsically illegal in character,' 'the possession of which, without more, constitutes a crime.' " *Id.* at 304 (internal citations omitted). Conversely, derivative contraband, was defined as property that was not inherently unlawful but which could become unlawful because of its use. *Id.* The court classified the firearms as derivative contraband and explained that a property interest in derivative contraband "is not extinguished automatically if the item is put to unlawful use"; the destruction of such items is "subject to scrutiny for compliance with the safeguards of procedural due

---

14. Article 24 was also one of the bases for Serio's suit against the County in the Second Amended Complaint.

process. *Id.* Recognizing that firearms are not inherently illegal, the Court explained that "[t]hey become illegal only because [the owner] was technically a convicted felon in possession of them," and held that Cooper had a protected ownership interest in the firearms. *Id.* (internal citations omitted).

Likewise, the Court of Appeals for the Ninth Circuit in *United States v. Seifuddin, et al.*, 820 F.2d 1074 (9th Cir.1987), held that convicted felons had a non-possessory property interest in seized firearms. *Id.* at 1079. Both defendants, Idi Seifuddin and Harvey Merriweather, had been convicted of armed robbery, and the government had seized firearms in connection with their offenses. *Id.* at 1075–76. Subsequent to the seizures, the government sought to dispose of the firearms through forfeiture proceedings. *Id.* In determining whether the defendants had standing to challenge the forfeiture of the firearms, the Court found that the firearms were not contraband *per se* and that the firearms only became illegal when the defendants possessed them. *Id.* at 1079. According to the court, "the defendants therefore could hold a property interest in the forfeited [firearms] without that interest being possessory." *Id.*

Finally, in *Covington v. Winger*, 562 F.Supp. 115 (W.D.Mich.1983), *aff'd*, 746 F.2d 1475 (6th Cir.1984), the district court determined that a convicted felon was entitled to seek damages for the unlawful retention of firearms seized from his home. *Id.* at 123. The plaintiff, Covington, brought suit alleging that his personal property, including several firearms, had been seized by the police during a search of his apartment for narcotics, that the property had not been returned to him in violation of the Fourth and Fourteenth Amendments, and that he had retained a property interest in the firearms even though he was a convicted felon. *Id.* at 116. The Court determined that Covington had a property interest in the firearms despite his felony conviction, concluding that the firearms were not contraband *per se. Id.* at 123. When property seized is not inherently illegal to possess, the court

held that the property's owner may raise a due process claim. *Id.*

 We find this reasoning persuasive based upon our own jurisprudence. We have broadly defined property as "every interest or estate which the law regards of sufficient value for judicial recognition." *Dodds v. Shamer,* 339 Md. 540, 548, 663 A.2d 1318, 1322 (1995). We have recognized that contraband that is not inherently illegal to possess, such as derivative contraband, cannot be forfeited without a hearing, which implicates a need for due process of law when disposing of such property. *See 1995 Corvette v. Mayor & City of Baltimore,* 353 Md. 114, 136, 724 A.2d 680, 691 (1999); *Director of Finance of Prince George's County v. Cole,* 296 Md. 607, 619, 465 A.2d 450, 457 (1983); *Office of Finance of Baltimore County v. Previti,* 296 Md. 512, 525, 463 A.2d 842, 849 (1983). Derivative contraband is not *per se* illegal, but is contraband seized in connection with illegal activities, such as vehicles used in association with drug transactions. *See 1995 Corvette,* 353 Md. at 136, 724 A.2d at 691 (describing vehicles seized in connection with drug transactions as derivative contraband); *see also Director of Finance of Prince George's County,* 296 Md. at 619, 465 A.2d at 457 (defining money seized in connection with gambling as derivative contraband).

In the present case, whether Serio's firearms are viewed as derivative contraband as the court did in *Cooper* or as property that is incapable of possession because of Serio's status as a convicted felon, Serio is not divested of his ownership interest, and the County cannot just retain the firearms. Although Serio is not permitted to possess the firearms, he retains an ownership property interest in them and is entitled to due process protections under Article 24 of the Maryland Declaration of Rights, which states that, "no man ought to be taken or imprisoned or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." *See Dua,* 370 Md. at

630, 805 A.2d at 1076; *Pitsenberger v. Pitsenberger,* 287 Md. 20, 28, 410 A.2d 1052, 1056–57 (1980).

It is true that Serio did not institute suit against the County for its retention of the firearms directly under Article 24 in his Third Amended Complaint but only against Officer Russo. Count V of Serio's complaint reads as follows: "Plaintiff incorporates by reference all allegations within Counts I, II and III, and avers that Defendant Steven Russo violated Plaintiff's rights, under Article 24 of the Maryland Declaration of Rights, by taking actions inconsistent with Plaintiff's rights of due process." [15] Nevertheless, Serio has been denied his interest in his firearms because they have been wrongfully retained by Officer Russo and then by the County.[16]

The County, then, may have derivative liability under the doctrine of respondeat superior for a violation of Serio's due process rights. The doctrine of respondeat superior is, of course, a means of holding employers, including local governments, vicariously liable for the tortious conduct of an employee acting within the scope of his/her employment. *See Williams v. Maynard,* 359 Md. 379, 380–82, 754 A.2d 379, 380 (2000); *Housing Authority of Baltimore City v. Bennett,* 359 Md. 356, 362, 754 A.2d 367, 370 (2000); *DiPino v. Davis,* 354 Md. 18, 47–50, 729 A.2d 354, 369–70 (1999); *Ashton v. Brown,*

---

**15.** In Count V, Serio alleged that Officer Russo made "false, misleading and insufficient statements" in the warrant application to search Serio's home and to seize any firearms. Serio also incorporated all of the allegations set forth in Counts I, II and II of the Third Amended Complaint, which were those counts against the County under Sections 551(a), (b), and (c).

**16.** Summary judgment was entered against Serio in Count V of his claim against Officer Russo alleging a violation of Article 24 for misconduct in obtaining and executing the search warrant. In *Southern Mgmt. Corp. v. Taha,* 378 Md. 461, 836 A.2d 627 (2003), we held that a corporate employer is not liable under the doctrine of respondeat superior for the acts of its employees when a jury has determined that the employees' conduct did not establish liability for malicious prosecution of the plaintiff. *Id.* at 486, 836 A.2d at 641. Nevertheless, the *Taha* holding is inapplicable in the present case because the claim against Officer Russo implicated only his application for the search warrant and not his retention of the firearms.

339 Md. 70, 104, 660 A.2d 447, 464 (1995). Furthermore, we have explicitly stated that "local government entities do, indeed, have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of their employment." *DiPino*, 354 Md. at 51–52, 729 A.2d at 372. In the instant case, Officer Russo's actions in retaining the firearms may provide a basis for respondeat superior liability on the part of the County.

The County, under a theory of respondeat superior, and based upon its own continued wrongful retention of the firearms after Officer Russo submitted them, was in violation of Article 24 of the Maryland Declaration of Rights and Article III, Section 40 of the Constitution, providing for just compensation.[17] We have held that where the facts show that the governmental action infringes upon an individual's due process rights to property and his property is also taken without just compensation both Article 24 and Article III, Section 40 are violated. *See Dua*, 370 Md. at 629, 805 A.2d at 1076 (holding that the General Assembly's enactment of a statute that retroactively created late fees and validated statutory interest rates in consumer contracts, violated both Article 24 and Article III, Section 40); *Arnold*, 270 Md. at 294, 311 A.2d at 228 (holding that zoning ordinances that deprive a property owner of all reasonable uses of his property violate due process and constitute a governmental taking); *Leet*, 264 Md. at 611–616, 287 A.2d at 494–497 (holding that requiring a

---

17. Article III, § 40 of the Maryland Constitution provides:

 The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.

 We have applied Article III, § 40 to local governments and have held that the governmental action violated this provision of the Maryland Constitution. *See Becker v. State*, 363 Md. 77, 88–92, 767 A.2d 816, 822–24 (2001) *Arnold v. Prince George's Co.*, 270 Md. 285, 294, 311 A.2d 223, 228 (1973); *Leet v. Montgomery County*, 264 Md. 606, 611–616, 287 A.2d 491, 494–497 (1972); *Hebron Savings Bank v. City of Salisbury*, 259 Md. 294, 305, 269 A.2d 597, 602 (1970).

person to remove property abandoned by a trespasser constitutes a taking without just compensation or due process).

When property has been physically appropriated by a governmental entity from a property owner, the government must "justly" compensate the property owner. *See City of Annapolis v. Waterman*, 357 Md. 484, 529 n. 21, 745 A.2d 1000, 1023 n. 21 (2000). In order to qualify for a compensation award, (1) the governmental action must constitute a taking, and (2) the taking must be for a public use. *See Brown v. Legal Foundation of* Washington, 538 U.S. 216, 231–32, 123 S.Ct. 1406, 1417, 155 L.E.2d 376, 392 (2003); *King v. State Rds. Comm'n*, 298 Md. 80, 83, 467 A.2d 1032, 1033–34 (1983); *Bureau of Mines of Maryland v. George's Creek Coal & Land Co.*, 272 Md. 143, 156–65, 321 A.2d 748, 755–760 (1974). Whenever a property owner is deprived of the beneficial use of his property or restraints are imposed that materially affect the property's value, without legal process or compensation, the owner is deprived of his property within the meaning of Article III, Section 40. *See City of Annapolis*, 357 Md. at 509, 745 A.2d at 1013; *Pitsenberger*, 287 Md. at 28, 33, 410 A.2d at 1056, 1060.

We have defined "just compensation" as "the full monetary equivalent of the property taken; the property owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." *King*, 298 Md. at 84, 467 A.2d at 1034. The full monetary equivalent to compensate a person deprived of his property interests by the government is based upon the fair market value of the property, *see Dodson v. Anne Arundel County*, 294 Md. 490, 494, 451 A.2d 317, 320 (1982); *Mayor of Baltimore v. Concord Baptist Church, Inc.*, 257 Md. 132, 141, 262 A.2d 755, 760 (1970), which in the present case may be realized through a court ordered sale of the firearms under the Maryland Rules.[18]

---

**18.** Maryland Rule 14–301 provides:

In the case *sub judice*, the retention of the firearms would appear to be a taking by the County. The County has conceded that it has no basis to institute forfeiture proceedings against the firearms because Serio has not been convicted of illegal possession of the firearms. As a result, the County cannot retain the firearms just because Serio cannot possess them, and Serio may be entitled to "just compensation."

In determining that Baltimore County cannot retain Serio's firearms without affording him due process, we shall direct a reversal of the summary judgment of the Circuit

---

Except as otherwise specifically provided in Rules 2–644 and 3–644 and Chapter 200 of this Title, the rules in this Chapter govern all sales of property that are subject to ratification by a court.
Furthermore, Maryland Rule 14–302 states:
(a) When court may order. At any stage of an action, the court may order a sale if satisfied that the jurisdictional requisites have been met and that the sale is appropriate.
Court ordered sales of property have been found appropriate in several contexts. *See Wallace v. Lechman & Johnson*, 354 Md. 622, 635, 732 A.2d 868, 875 (1999) (holding that a successful action for conversion results in a judicial sale of the property); *Marriott Employees Federal Credit Union v. MVA*, 346 Md. 437, 443, 697 A.2d 455, 458 (1997) (finding that repossessed vehicles are subject to judicial sale); *Elkton Elec. Co. v. Perkins*, 145 Md. 224, 228, 125 A. 851, 855 (1924) (holding that the sale of a trust property is appropriate where the court had assumed jurisdiction of the trust). There must be a final decree before a court may order a sale of property in order to meet the jurisdictional requisites of Rule 14–302. *See Elkton Elec. Co.*, 145 Md. at 228, 125 A. at 855.
Federal regulations provide a means to have seized firearms sold and the proceeds returned to the owner at the discretion of the Director of Bureau of Alcohol, Tobacco and Firearms. *See* Disposition of Seized Personal Property, 27 C.F.R. § 72.39 (2004), which states:
Final action.
(a) Petitions for remission or mitigation of forfeiture. (1) The Director shall take final action on any petition filed pursuant to these regulations. Such final action shall consist either of the allowance or denial of the petition. In the case of allowance, the Director shall state the conditions of the allowance. (2) In the case of an allowed petition, the Director may order the property or carrier returned to the petitioner, sold for the account of the petitioner, or, pursuant to agreement, acquired for official use.
In *Cooper v. City of Greenwood*, 904 F.2d 302 (5th Cir.1990), the United States Court of Appeals for the Fifth Circuit interpreted Section 72.39 to apply to felon in possession cases where the owner of firearms could not lawfully possess them after conviction. *Id.* at 306.

Court entered in favor of the defendants. A reversal of summary judgment returns the posture of the case to the point at which summary judgment was entered. *See Ford v. Loret,* 258 Md. 110, 120, 265 A.2d 202, 207 (1970); *Jordan v. Morgan,* 247 Md. 305, 309, 231 A.2d 13, 15 (1967). Liberal amendment of the pleadings under Rule 2–341 [19] is permissible upon remand, so that Serio's claims can be decided on the merits and not based upon the technicalities of pleading. *See Ott v. Kaiser–Georgetown Comm. Health Plan Inc.,* 309 Md. 641, 650, 526 A.2d 46, 51 (1987).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RE-SPONDENT.*

---

19. Maryland Rule 2–341 states in relevant part:
 Amendment of pleadings.
 (c) Scope. An amendment may seek to (1) change the nature of the action or defense, (2) set forth a better statement of facts concerning any matter already raised in a pleading, (3) set forth transactions or events that have occurred since the filing of the pleading sought to be amended, (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party so long as one of the original plaintiffs and one of the original defendants remain as parties to the action, (6) add a party or parties, (7) make any other appropriate change. Amendments shall be freely allowed when justice so permits. Errors or defects in a pleading not corrected by an amendment shall be disregarded unless they affect the substantial rights of the parties.